[ PHILADELPHIA, FEBRUARY 15TH, 1840. ]


STEVENSON *against* STONEHILL.


APPEAL.


Where a building partly finished was bought at sheriff's sale by A., and a deed duly
made and acknowledged to him, and then a judgment was obtained against him; and
after the building was finished it was again sold at a sheriff's sale, as the property of
A., it was *held,* that the judgment creditor was entitled to a preference out of the pro-
ceeds over a mechanic who under a contract with A. did work in completing the
building.


THIS was an appeal from a decree of the District Court for the
City and County of Philadelphia, in the matter of the distribution of
the proceeds of a sheriff's sale of a building and lot of ground, sold
by virtue of an execution, in an action brought by Hugh Stevenson
against James Stonehill.

The fund for distribution was $324 72, and the District Court
referred the subject to an auditor, who reported that the sum of
one hundred and fifty-six dollars was claimed for arrears of ground-
rent, and the balance was claimed by the counsel for John Henson,
a lien creditor, which was resisted by the counsel for the judgment
creditors—on two grounds. First, That there was a verbal contract
between Mr. Henson and James Stonehill, that the work should be
paid in plastering; and therefore the work was not done, nor the
materials furnished on the credit of the building, and no lien could
be filed.   Second, That the lien was filed on the 15th of February,
1837, when the evidence proved that the work was not completed
till sometime in April, 1837.

On the first point the auditor decided the lien to be good. · On
the second, it was proved that the roof was put on in the autumn of
1836, and temporarily fastened for the winter, and finished in the
spring of 1837, requiring three hands one day to complete the work.

(Stevenson *v.* Stonehill.)

The whole amount of Henson's bill was two hundred and eighty dollars and seventy-eight cents; the cost of completing in the spring of 1837, one hundred and eleven dollars and twenty cents; leaving the amount of work and materials, performed and furnished, in the autumn of 1836, one hundred and sixty-nine dollars and fifty-eight cents; which the auditor decreed to Henson, in preference to the judgment creditors.

The following testimony was reported by the auditor.

James Stonehill, the defendant, testified: "I bought this property in 1836, March. (Sheriff's deed to Stonehill 7th of March, 1836.) I finished the building; Mr. Henson put on the zinc roof. I made the contract with him to put on the roof, the next fall after I bought the house. Mr. Henson commenced working in November, 1836. The roof was finished in the spring of 1837; about April. I made the contract with Mr. Henson at sixteen cents per foot. He and I talked, that he might want plastering at some future time; we were talking it over that it might be so; I expected it was to be so; we had no decided agreement in writing; and Mr. Henson I understood would take plastering; I understood him so. I would not have had a zinc roof put on, unless I had expected some part was to be paid in plastering."

Thomas Stonehill, testified: "I knew the property; Mr. Henson put the zinc roof on it. Mr. Henson told me while I was at work adjoining this property, that he would take plastering for the zinc roof: to tell my father (James Stonehill,) so. This was before the roof was begun. When I told father, I dont think father knew whether he would have zinc or shingle roof."

Lewis D. Belair, assignee of Thomas Haslam the appellant in this case, filed his judgment in the Court of Common Pleas, on the 20th of April, 1836, for $72.

The following exceptions to the auditor's report were filed in the Court below.

"That the auditor erred in not reporting in favour of a certain judgment for $72, filed in the Court of Common Pleas, against the defendant Stonehill, on the 20th of April, 1836, in favour of Lewis D. Belair, as assignee of Haslam, in preference to any mechanic's claim, for the following reasons.

1. That said real estate sold under the writ of *venditioni exponas* in the case, was purchased by the defendant at sheriff's sale, and conveyed to him by sheriff's deed, on the 7th of March, 1836: consequently said judgment became a lien on said real estate, on the 20th of April, 1836.

2. That the evidence on said report shows that the claim for

(Stevenson v. Stonehill.)

materials reported in favour of Henson, as having a priority over said judgment, was not created until the autumn of 1836, six months after said judgment became a lien: and consequently, could not affect the prior lien of said judgment."

· The District Court confirmed the report of the auditor. An appeal was then taken, and the following exceptions filed.

1. "That the District Court erred in confirming the claim of John Henson, for materials furnished under the Mechanics' Lien Law. Because Lewis D. Belair, the appellant, filed a transcript of a judgment of an alderman of the city of Philadelphia, in the Court of Common Pleas for the City and County of Philadelphia, agreeably to the act of assembly in such cases made and provided, on the 20th of April, 1836, six months before said Henson's claim could have accrued; therefore said judgment was entitled to a priority.

2. That Henson having agreed to take plastering work in exchange, he had no lien.

3. That no second commencement could exist after the judicial sale of the premises."

Mr. *Wilkinson*, and Mr. *Newcomb*, for the appellants, cited *M‘Lanahan* v. *M‘Lanahan*, (1 *Penn. Rep.* 96.) *Corporation* v. *Wallace*, (3 *Rawle*, 166.) *Case of the Olympic Theatre*, (2 *P. A. Browne*, 275.)

Mr. *Emlen*, for the appellee, cited the *American Fire Ins. Co.* v. *Pringle*, (2 *Serg. & Rawle*, 138.) *Hinchman* v. *Lybrand*, (14 *Serg. & Rawle*, 32.) *Pennock* v. *Hoover*, (5 *Rawle*, 291.)

The opinion of the Court was delivered by

Huston, J.—The property of James Stonehill was sold at sheriff's sale, and the money not being sufficient to satisfy all liens, a question arose between Lewis D. Belair, assignee of Haslam, and John Henson; the first claimed under a judgment entered the 20th of April, 1836; the other for work and materials in putting a zinc roof on the building, in November, 1836, and the following winter.

The property had been sold by the sheriff in January, 1836, and then struck down on the bid of James Stonehill, to whom the sheriff executed a deed on the 7th of March, 1836. At that time the walls were raised two stories and more. The front was two stories high; the back was three stories high, and the two gable ends were two stories and a little more. About March, 1836, Stonehill, assisted by his sons, put the scaffolding in order, and covered the walls: in another part of the deposition it would seem, he covered the walls immediately after it was purchased at the sheriff's sale: in another

place he says, ' we began what I call building about the middle of March ;' (but we are left to conjecture what it was that he called building :) the next sentence is, ' I don't suppose I lost a day after the sheriff's sale, before I went and put it to rights : *my sons were with me in putting up the scaffold, and propping and covering the walls.*'

There is no more common or prolific source of mistake, and sometimes of difficulty, than taking the decision of a Court, or the words of a judge who delivers that opinion, to be applicable to all possible cases. No two things, which in one particular are identical, can be more different than a private sale of property against which there are liens, and a public sale of the same property on execution by a sheriff. The first leaves it subject to all liens precisely as before the sale, and puts the purchaser in possession subject to them ; the sheriff's sale divests all liens, (except one or two special exceptions) and pays off all incumbrances or delivers the property to the purchaser free and clear of them.

In *The Insurance Co.* v. *Pringle*, (2 *Serg. & Rawle*, 138,) we have a case of a private sale by Mullowny, who had begun to build a house, to Pringle. This latter did not pay the purchase-money, but gave a mortgage for it, which was immediately recorded. Pringle went on to finish the building. It is not expressly stated, but from the whole case, I take it it was finished by the same men and under the contracts made by Mullowny with them. The question decided was, that the workmen had the same lien for the work done after the sale, as for that done before the sale, and that all came in before the mortgage which was after the commencement and before the finishing of the house; but the very cautious Judge (TILGHMAN,) who delivered the opinion of the Court, expressly says, "extreme cases may be put which are not within the meaning of the law. Houses are sometimes finished sufficiently for particular purposes, such as ware-houses or stores, and not for dwelling-houses; and they may remain in this situation for years and then be finished. In such case, the completion of the work might fairly be considered as a new building, and not to be connected with the first part of the building, so as to give a lien from the original commencement." See 13 *Serg. & Rawle*, 369. This case then was not designed to be an universal rule, by the two judges who decided it. Judge YEATES differed ; his opinion is short, but he considers that the work done after the sale, was in substance a new commencement; certainly it had, in addition to the building, a new person responsible. I feel no disposition to dispute that case, if, as I take it, Pringle when he bought understood and agreed that the house was to be finished by the same persons, and on the contracts made by Mullowny. Where a building was first raised of frame-work, and afterwards raised on props, and a cellar dug under it and walled, and a brick chimney built in it, it was held, and I think

rightly, in the Common Pleas, that these last workmen had a lien from the commencement of this alteration, but no further back.

But *Pennock* v. *Hoover*, (5 *Rawle*, 291-306,) is supposed to have settled the law.  I agree it settled the law in that case, which was thus.  W. Myers had made a contract to purchase, on certain terms, some property in the Northern Liberties; and he made contracts with certain persons, who, to the number of six, dug cellars and walled them.  Myers became involved, assigned to trustees, and admitted he had no title, and could give none.  Those six abandoned.  Myers, in the name of Hoover, made a new contract for the square, and began to build immediately on the six cellar walls; and also began twelve other houses.  The whole were erected and covered, but only a few finished.  Myers again failed; and the whole of his right was sold on a judgment against him; and it was held, that the lien on the six houses begun on contracts which failed by the fault of Myers, and into which he stepped and completed them, commenced when the six persons began to work; and the cases in 2d and 13th *Serg. & Rawle*, before cited, are relied on, and instead of being controverted in any respect, are, or purport to be, the ground of the decision: we have seen what they are.  None of these cases seem to me to apply to a sheriff's sale.  Admit that the lien commences with the first work—the sheriff's sale extinguishes that lien totally: if any lien in favour of material-men or mechanics is found to exist after the sale, it must commence after the sale; for so far as it existed before the sale, it has totally ceased.  No judge has more decidedly or clearly expressed the effect of a sheriff's sale in discharging from all previous liens, than Judge KENNEDY, who delivered the opinion in *Pennock and Hoover;* and most clearly he had not such a sale in view, in delivering that opinion.  If he had, the effect would be, that a sale on the lien of one, would leave the property in the hands of the purchaser liable to the lien of another.  This is not alleged or pretended.  The act of 1836, expressly provided, that where the proceeds of sale will not pay all, they shall be paid *pro rata.*

There is no case in which a lien can go back and cut out prior liens, except by express legal enactment: no Court ever decided that this could be effected by construction.

The ground on which it was enacted and decided that the lien of those who did the last work, *e. g.* the plasterer and painter, should have a lien from the beginning, was to make all equal; that he who walled the cellar or built the walls of the house should not take all and leave nothing for those who did the subsequent work; but this cannot apply in case of a sheriff's sale: there those who have done work are paid in full; or at all events the property is freed from any claim by them.  They cannot come in for any share of the money on a second sale; nor can those who work for the purchaser go behind the sheriff's sale.  There cannot be much of either

(Stevenson *v.* Stonehill.)

inconsistency or absurdity in applying the word commencement, to the work done after a sheriff's sale: it is used every day. The purchaser of an unfinished building is asked if he means to finish it? he replies, yes; I shall commence immediately; or, I shall commence whenever the weather will permit. When the former owner is deprived of all interest, and the former workmen discharged and paid, and their interests have ceased, and no more can be done except at the instance of the new owner and under a new contract, it would seem both unjust and unreasonable to give the new workmen on a new contract a lien commencing before the present owner who employed them had any right to bind the property or any interest which would be the subject of lien. I am then of opinion, that the case of a sale on execution was not in the mind of the Court when those decisions quoted were made; and such a case is not affected by them.

As to what was done by the owner, whether it was propping the walls, or propping the scaffold and covering the walls, I leave it out of the case; he got no lien by that nor could he acquire any lien by any work he could do: his work is not within the law. In *Babb* v. *Reed, et al.,* (5 *Rawle,* 159,) it is said, " That a person can enforce a lien on his own building at the expense of third persons who hold liens on it, for debts contracted by the former to the latter, is not reconcilable with law or equity." If his work could create no lien in his own favour, it is not easy to see how it can by relation carry back the lien of other workmen, so as to overreach and cut out the judgment creditors of the owner. But I do not see how what the owner did, can in any sense be called the commencement or recommencement of the building. There is no evidence to show that any work was done to it, until the man Henson began to put on the roof in November following. The judgment of Haslam was entered in the previous April; and he is entitled to be paid before Henson.

Decree of the District Court reversed.