### CENTRAL TRUST CO. *v.* CAMERON IRON & COAL CO.

*(Circuit Court, W. D. Pennsylvania. July 9, 1891.)*

1. MECHANIC'S LIEN—PROPERTY SUBJECT TO—COKE-OVEN.
　　A coke-oven is not a building for the construction of which a mechanic's lien is given by Act Pa. June 16, 1836, § 1, and amendatory acts, providing that every building erected in this commonwealth shall be subject to a lien for the payment of all debts contracted for work done or materials furnished for, or about the erection or construction of, the same.

2. SAME—PREPARATION OF GROUND FOR BUILDING—MORTGAGE—PRIORITY.
　　Where the contract provided that the ground on which the coke-ovens were to be placed by the contractor must be cleared of all stumps and other material that would render their foundations insecure, such preparatory work by the owner is not the commencement of building, within the meaning of Act Pa. June 16, 1836, § 10, providing that the lien therein given shall be preferred to every other lien or incumbrance attaching to the building or ground after the commencement of such building; and a mortgage on the premises executed after such work was done, and before the construction of the ovens was begun, has priority over the mechanic's lien.

In Equity. Petition of Philip T. Hughes for a mechanic's lien.
*Francis Rawle*, for petitioner.
*A. H. Joline* and *William P. Schell*, Jr., for Central Trust Co.
Before ACHESON and REED, JJ.

ACHESON, J. The petitioner's claim purports to be against a building which it describes thus: "The said building is built of stone, and constitutes a series of coke-ovens, for coking coal." These ovens, it would seem, are of the ordinary size and form. Now, we know, from common observation, that coke-ovens are about six feet in height, and are arched over at the top, a hole being left in the crown for the exit of gases, and for the introduction of coal, with a door in front for the discharge of the coke, which during the burning process is walled up. Is, then, a coke-oven a "building," within the meaning of the mechanic's lien act of 1836? The word as there used cannot be held to include every species of erection on land. *Truesdell* v. *Gay*, 13 Gray, 311. "Taken in its broadest sense," says the court in that case, "it can mean only an erection intended for use and occupation as a habitation, or for some purpose of trade, manufacture, ornament, or use, constituting a fabric or edifice, such as a house, a store, a church, a shed." That a coke-oven is not intended as a habitation or for shelter is certain. Neither is it capable of occupation and use for the purpose of trade, etc., in the

sense of the above definition. It is no more a building than is any other oven erected on land for the purpose of baking bread, or drying any substance. In the recent case of *Cowdrick* v. *Morris*, 9 Pa. Co. Ct. R. **312**, it was decided by the court of common pleas of Center county, Pa., that a lime-kiln is not a building within the scope of the mechanic's lien law. But if a lime-kiln is not such a building, neither is a coke-oven. In the case of *Truesdell* v. *Gay*, *supra*, it was held that a wall built around three sides of the stack of an iron furnace at the distance of a few feet from it, in order to protect it from earth slides, was not a building within the meaning of such a law. It is worthy here of note that since the act of June 16, 1836, giving a mechanic's lien against buildings, there has been supplemental legislation expressly extending the act to steam-engines, coal-breakers, pump-gearing, etc., (Act April 21, 1856; P. L. 496,) and, in certain counties, to "improvements, pumps, engines, tanks," etc., (Act Feb. 27, 1868; P. L. 212,) connected with oil refineries, and to "oil-tanks," whether connected with a refinery or not. Thus have we in subsequent statutes *in pari materia* a legislative indication of the meaning of the word "building" which should govern in the construction of the original act. *U. S.* v. *Freeman*, 3 How. 556. We do not think that the cases of *Short* v. *Miller*, 120 Pa. St. 470, 14 Atl. Rep. 374; *Short* v. *Ames*, 121 Pa. St. 530, 15 Atl. Rep. 607; and *Titusville Iron-Works* v. *Keystone Oil Co.*, 130 Pa. St. 24, 18 Atl. Rep. 739,--sustain the position taken by the petitioner. In our judgment, in no reasonable sense can a coke-oven be said to be a building.

But, if the contrary conclusion were admissible, still another obstacle confronts the petitioner. The mortgage of the Cameron Iron & Coal Company to the Central Trust Company was recorded August 8, 1888, whereas the contract between the Cameron Iron & Coal Company and the petitioner, under which the latter built the coke-ovens, was not signed or made until November 1, 1888. The petitioner, however, claims the benefit of that clause of the mechanic's lien act which provides that "the lien for work and materials aforesaid shall be preferred to every other lien or incumbrance which attached upon such building and ground, or either of them, subsequently to the commencement of such building." But we are of opinion that the evidence fails to show that the building of the coke-ovens commenced before the recording of the mortgage. The written contract of November 1, 1888, on its face is against that view, for it provides for the whole work of construction, and the first clause of the specification reads: "The ground on which the ovens, wharves, and railroad tracks are to be placed must be cleared from all stumps, logs, and other material that will give an insecure foundation for the work, and ditched so as to drain the bottom thoroughly." Nor does the parol testimony sustain the allegation that the commencement of building was before the recording of the mortgage.

The evidence which comes from the witnesses shows this state of facts: In September, 1887, the Cameron Iron & Coal Company cleared off the land intended and selected for the coke-ovens; stumps were then taken out; the brush cleared off; and in November of that year a ditch was

cut through the center of the coke-ground to take off the water. That fall other ditches were cut, and roads were cut. During the fall of 1887 and the succeeding winter stone was quarried and hauled to and delivered on the coke-ground, and also logs. Ultimately this stone was used in building the ovens, and the logs in building the cribbing for a coke-wharf. But the petitioner had nothing whatever to do with the above-mentioned work, or with any work done on the premises before the date of his contract. And, then, in point of fact, no part of the building of the coke-ovens was done prior to November 1, 1888. It seems very clear to us that all the previous work on the ground was of a preliminary nature,—preceding the commencement of building,—and hence did not have the effect of carrying back the petitioner's alleged lien under his contract of November 1, 1888, so as to give him priority over the mortgage. Such a result would be unreasonable and inequitable. When the mortgage was recorded the work of construction of the coke-ovens had not actually begun. Not a stone had been laid, nor a stick of timber put in place. Such work as then appeared on the ground was, at the most, merely preparatory to the building of coke-ovens, and by no means the commencement of building. Moreover, this preliminary work was entirely the work of the Cameron Iron & Coal Company itself, and it would be most extraordinary if it could by relation give to the petitioner's subsequent contract precedence over the mortgage. No case has been cited which sanctions such a doctrine, while the case of *Stevenson* v. *Stonehill*, 5 Whart. 301, 306, is directly against it. It follows, therefore, from what has been said, that the petitioner is not entitled to a decree that his claim is a lien paramount to the mortgage.

REED, J. I concur in the foregoing opinion.