PAUL KIENE AND J. R. VOGEL v. O. F. HODGE, Appellant.

Mechanic's Lien: "COMMENCEMENT OF BUILDING" UNDER CODE, 2135, CONSTRUED. Filling a water lot in order to abate a nuisance, without any intent of building thereon, is not the "commencement" of a building erected thereon immediately after the filling is done, within Code, 2135, giving mechanics preference to all liens made after the commencement of the building. (1)

Equities as to Lien on Betterment. Where plaintiff takes a mortgage on a lot which is insufficient security for it, the money to be used to erect a building, and the loan is paid out, among others, to the lienors as the work progresses, the first material being furnished when plaintiff's mortgage was already of record, the mortgage takes precedence over the mechanic's lien as to both lot and building. (2)

*Appeal from Dubuque District Court.*—HON. D. J. LENE-HAN, Judge.

THURSDAY, FEBRUARY 1, 1894.

O. F. HODGE is the owner of certain lots and parts of lots in block 20 in the Dubuque Harbor Improvement's addition to the city of Dubuque, Iowa, and, on the second day of June, 1890, he gave to the plaintiffs a mortgage on said lots to secure the sum of eight thousand dollars, said mortgage being filed for record on the eighteenth day of July, 1890. The Standard Lumber Company and Knapp, Stout & Company are defendants, and each files an answer and cross petition, and each claims a mechanic's lien on the lots and improvements thereon prior to plaintiff's mortgage, and, as between themselves, they contest as to the priority of their respective mechanic's liens. The district court gave judgment for each against Hodge, and decreed foreclosure of the respective liens in amounts and with priorities as follows: *First*, plaintiffs' mortgage, nine thousand, one hundred and sixty-two dol-

lars and twenty-five cents; *second*, the Standard Lumber Company's, one thousand, one hundred and seven dollars and two cents; *third*, the Knapp, Stout & Company's, five hundred and ninety-six dollars and fifty cents.   The Standard Lumber Company and Knapp, Stout & Company each appeals.—*Affirmed.*

*Henderson, Hurd, Daniels & Kiesel,* for appellant Knapp, Stout & Company.

*Longueville & McCarthy* for appellant Standard Lumber Company.

*Powers, Lacy & Brown* for appellees.

GRANGER, C. J.—1. The lots on which the respective liens are claimed were purchased of Hon. J. H. Shields, through Peter Kiene, Jr., who took and held the title for Hodge till April 8, 1888, when he conveyed the same to Hodge.   At the time Hodge took the title he gave J. R. Vogel a mortgage for one thousand, five hundred dollars, the loan being obtained through Peter Kiene & Son, as agents, which remained till June 2, 1890, when the mortgage in suit was given to the plaintiffs, through Peter Kiene & Son as agents, the one thousand, five hundred dollar mortgage being included therein.   The eight thousand dollar loan by plaintiffs was for the purpose of erecting a building on the lots, and it was so used.   On the twenty-sixth day of August, 1890, Hodge made a contract with one Spaulding to furnish and drive the piling for the building, and the work was commenced in a few days thereafter. The stakes to indicate the lines of the property, with a view to definitely locate the building, were set by the engineer in August or September, 1890.   The plans for the building were commenced by the architect the latter part of August, 1890.   No materials for the building were furnished before October, 1890.   These

lots are what are called "water lots." They are in what was a slough of the Mississippi river, and were covered with stagnant water. While Peter Kiene, Jr., held the title to these lots for Hodge, he received notice from the city to fill them, to abate the nuisance. He notified Hodge, as the real party in interest, and for something over a year before the driving of the piling was commenced the work of filling these lots was going on. The deed from Shields to Kiene, in trust for Hodge, was made December 17, 1886, and from that time forward Kiene was the agent for Hodge for the sale of the lots up to the execution of the eight thousand dollar mortgage, or about that time. There seems to have been no definite purpose to build on the lots till about May 1, 1890. At that time the filling was well advanced, if not nearly complete. It may be said as a fact scarcely open to dispute that the filling was commenced and carried forward without reference to the fact of building; that is, the filling would have been done without any purpose to build. Mr. Hodge, as a witness, said: "I bought these lots in case I might need them, or sell them, or anything of that kind; the same as anybody buys lots." The filling was to a greater height than was necessary to abate the nuisance on acount of the stagnant water. It is stated by one witness, who was the person placed on the lots to receive and spread the material used as filling, that the water was eight or nine feet deep, and the "fill went above twelve feet on an average." At the same time that these water lots were being filled other water lots in the locality were also being filled by the owners, to abate the nuisance; and some of them were filled above what was necessary therefor, some being filled to grade and others above grade. The filling of the lots generally was not with reference to any present purpose of building thereon, but in some cases to enhance the value, and to make the lots more salable. The controverted

question in this case is as to whether or not this filling of the lots was a commencement of the building, so as to give the mechanic's lien priority over the mortgage.

We are clearly of the opinion that it was not. Until these water lots are filled they are not proper places for the erection of buildings. The filling of these lots is rather a making of the lot than a part of the making of a building or improvement thereon. When filled they are called "made ground," or "filled ground," and they are then nothing but naked lots. The fact that they are filled merely as an improvement to the lot, without reference to building, shows that the filling is an improvement distinct from the erection of buildings. We can not better illustrate our view of what is the commencement of a building, within the spirit of the mechanic's lien law, than by giving the rule cited by appellant as adopted in *Pennock v. Hoover*, 5 Rawle, 291. It is one of the earlier cases, and has been many times cited. Let it first be said that that case involves no question as to filling, but the act there held to be the commencement of a building was the digging and walling of the cellar. The judge who delivered the opinion gave what he considered the universal understanding as to what constitutes the commencement of the building of a house, which is "the first labor done on the ground, which is made the foundation of the building, and to form a part of the work suitable and necessary for its construction." That is the rule we intend to apply. What was made the foundation of the building in this case? Not the lot as it was with its surface eight feet under water, but the ground constituting the lot when filled; and the first work done thereon was the driving of the piling. That was work "suitable" and "necessary" for the construction of the building. The rule of the *Pennock case* is adopted in *Brooks v. Lester*, 36 Md. 65, and is quoted with approval in *Conrad v. Starr*, 50 Iowa, 470. The case of *Jean v.*

*Wilson*, 38 Md. 288, is a somewhat significant one, as it involves the filling of water lots without any present intention of building; but in doing the filling the foundations were laid, and walls made for future use, and which were afterward used. It is held that the filling was not a commencement of the building. We think it can be fairly said in this case that the filling of the lots and the erection of the building thereon were distinct and separate enterprises. To have completed the filling of the lots, and then stopped, commenced no building. On the lot would have been no part of a building. But when the piling was driven, or a foundation started, a building was commenced, within the rule of the *Pennock case*. We are not to be understood as holding that, if the earth or filling had been placed on the lot only as the foundation for the building afterward erected thereon, the commencement of such foundation would not have been the commencement of the building, for such a case, as we view the facts, is not before us.

II. Appellants insist that in any event they should have a prior lien as to the building, and an order for its sale and removal under the provisions of section 9, chapter 100, Acts Sixteenth General Assembly. Such orders are made in the discretion of the court, under the terms of the section, and involve a finding of equities for their support. When Hodge concluded to erect the building, he applied to Kiene & Son as agents for plaintiffs, for the loan of $8,000 to erect the building, and the loan was made for that purpose, and the money paid out by Kiene & Son to the material furnishers and others as the building progressed, including the defendant companies. The lots, independent of the building, were not sufficient security for the loan, and the mortgage was taken with the understanding that the money was to be applied in increasing the value of the security by the erection of the improvement. The

money was, in good faith, placed into the building, and the mortgage stands as a first lien upon the entire property. The equities are strong in favor of the plaintiffs. At the time defendants commenced to furnish the lumber for which their liens are claimed, the records indicated the lien of plaintiffs, and they engaged in the transaction in the full light of the facts. The judgment of the district court seems to us to be both legal and equitable, and it is AFFIRMED.