of the trial court, it would be necessary to regard the form rather than the substance.

We hold, therefore, that the allegations of the second defense, if substantiated by evidence, present a valid defense to this action instituted by the receiver, and that the evidence offered in substantiation of the same was improperly rejected.

The judgment of the common pleas court is therefore reversed, and the cause remanded.

*Judgment reversed and cause remanded.*

SULLIVAN and VICKERY, JJ., concur.

---

THE NORTH SHAKER BOULEVARD CO. ET AL. *v.* THE HARRIMAN NATL. BANK OF CITY OF NEW YORK, TRUSTEE.

*Liens—Validity and priority—Bondholder's mortgage and me-chanics' liens—Construction work not commenced in good faith before mortgage recorded—Section 8321-1, General Code—Failure of foreign bank to qualify to do business in Ohio—Section 178, General Code—"Doing or trans-acting business" construed—Trustee of bondholders not "doing business" by instituting foreclosure, when—Na-tional banks governed by federal, and not state, laws—Trusts will not fail for want of trustee—Error proceed-ings—Judgment not reversed as against weight of evi-dence, when.*

1. A trust is never allowed to fail for want of a trustee.
2. Reviewing court cannot disturb judgment, unless as matter of law it is manifestly against weight of evidence.
3. Judgment on conflicting evidence that trust mortgage was recorded prior to actual commencement of construction and

488    OHIO APPELLATE REPORTS.

N. S. Boulevard Co. *v.* Natl. Bank.    [22 Ohio

improvement work on premises under which mechanics' liens were claimed cannot be disturbed.

4. Materialmen *held* estopped from setting up superiority of mechanics' liens over trust mortgage, where all evidences of commencement of improvements were removed prior to recording of mortgage.

5. To entitle one to mechanic's lien, having priority over mortgage recorded subsequent to commencement of improvements, in view of Section 8321-1, General Code, construction must be founded on contractual relation in good faith, and not on fact made false for financial purpose.

6. Single act of foreign bank in filing action as trustee to foreclose mortgage *held* not doing business in state, within Section 178, General Code.

7. National banks derive authority from federal law, and no state law is valid which is in contravention therewith.

8. Where foreign bank, as trustee for bondholders, was not doing or transacting business in Ohio, it was not required to comply with Section 178, General Code.

9. No single act is interpreted as transaction of business in sense contemplated by Section 178, General Code, requiring foreign corporation to be licensed to do business within the state.

10. Even though foreign bank, as trustee, should have complied with Section 178, General Code, to become trustee under mortgage, failure therein *held* not to render mortgage void, since equity, without disturbing trust, would protect persons relying on strength of mortgage security.

(Decided November 17, 1924.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Bulkley, Hauxhurst, Jamison & Sharp,* for plaintiffs in error.

*Mr. Bertram L. Kraus, Messrs. Ulmer & Berne* and *Messrs. Thompson, Hine & Flory,* for defendant in error.

SULLIVAN, J.    This cause comes into this court

OHIO APPELLATE REPORTS. 489

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

by proceedings in error from the court of common pleas of Cuyahoga county, and in it is sought to reverse the judgment of the court below, which held in favor of the Harriman National Bank of the city of New York, trustee, as against numerous lienholders, and the question of the validity and priority of a mortgage is determinative of the issues on review.

It is important to fix in mind at the outset that the bank was acting in the capacity of trustee for bonds outstanding to the amount of $1,309,500, secured by mortgage, and by consent of all the parties the land covered by the mortgage was sold at sheriff sale for about $700,000. Under the holding of the court below in favor of the validity and priority of the mortgage, as against the lienholders, it is estimated that the bondholders, even under such a status, would suffer loss somewhat in excess of 50 per cent. of their claims. The lienholders are not laborers, but concerns engaged in supplying materials and executing contracts therefor, and the opposing interests represent purchasers of the aforesaid bonds who relied upon the priority and validity of the mortgage.

The foreclosure action was commenced in June, 1923, by the Harriman National Bank, as trustee for the bondholders, on account of the defaulting of conditions recited in the mortgage, and it is well to keep in mind, in the consideration of the questions in this case, that the bank, on May 20, 1922, deposited with the treasurer of the state of Ohio approved securities to the extent of $100,000, and received from the department of banks of Ohio a certificate that it had complied with the laws of

this state appertaining to foreign trust companies, and by reason of such action was duly licensed to transact business in the state of Ohio. Six days subsequently thereto, to-wit, May 26, 1922, the North Shaker Boulevard Company acquired title to the premises by deed, which was recorded as of that date. On the same date the mortgage securing the bonds was recorded, and on November 9, 1922, the Harriman National Bank received from the secretary of state a certificate authorizing it as a foreign corporation to do business in the state of Ohio.

In the early part of 1923 numerous mechanics' liens were filed for debts, mainly incurred for the months of January and February, 1923. Thus it is observed that prior to the filing of the action in foreclosure by the bank, as trustee for the bondholders, it, in an endeavor to comply with the statutes of Ohio, made the deposit of $100,000 of approved securities, as aforesaid, received from the state department of banks the certificate of compliance with Ohio laws, as aforesaid, and applied for and received the certificate of authorization as aforesaid. The deed and mortgage as aforesaid had also been recorded with the recorder of deeds of Cuyahoga county.

Under the record in the case the bank itself had no financial interest, and acted only in the capacity of trustee, a prerogative derived from the provisions of the Federal Reserve Banking Act (38 Stat., 251, as amended), and in the consideration of this case the bank can only be treated in the aforesaid capacity. This has an important bearing upon the case, for the reason that a trust is

OHIO APPELLATE REPORTS.        491

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

never allowed to fail for want of a trustee, and therefore, with this principle in view, there is little force due to any attack upon the trusteeship. The trust itself is the real important matter under consideration, and whether it stands or falls does not depend upon the power of the bank to act in the capacity of a trustee.

As bearing upon this principle we quote the following paragraph from Eaton on Equity (2d Ed.) by Throckmorton, at page 325: "It is a rule which admits of no exception that a court of equity will never allow a trust to fail for want of a trustee. This rule is applied wherever there is no appointment of a trustee, where the individuals named as trustees fail by death, disability, or by refusal to act, or where the trust cannot, for any reason, be executed through the medium specified by the settlor. In all these cases a court of equity will supply the deficiency, and the trust will be executed through some agency designed by it. Property once charged with a valid trust will be followed in equity into whosoever hands it comes, and he will be charged with the execution of the trust, unless he is a purchaser for value, and without notice."

See Perry on Trusts, Section 38, and *Shepherd* v. *McEvers,* 4 Johns. Ch. (N. Y.), 136, 8 Am. Dec., 561.

Numerous counsel, representing the bank trustee and the lienholders, have filed lengthy and learned briefs covering every conceivable question of law which is considered applicable to the facts contained in the voluminous record. These briefs have been of great aid to the court in the consideration of the issue between the bondholders and the lien-

holders, but we are of the opinion that the question of the priority and validity of the mortgage, as it affects the lienholders, is not as intricate and involved as the length and merits of the briefs would indicate. It must not be forgotten that this is a reviewing court and that, so far as the facts in the case are concerned, the record is our guide, and there are certain rules of law and judicial authorities which this court is bound to follow in the consideration and determination of the legal questions involved; in other words, the court below found in favor of the bank trustee as to the priority and validity of the mortgage, and thus in favor of the bondholders as against the claims of the lienholders. This court has a distinct duty, not applicable to the court below, in the determination of questions nisi prius. A reviewing court in Ohio, under well-established Supreme Court authority, as well as under numerous authorities of this and other Courts of Appeals, cannot disturb the judgment of the court below, unless as a matter of law, and not as a matter of opinion or judgment, the judgment below appears clearly and manifestly against the weight of the evidence.

While it is true that in briefs and in oral argument counsel did not adhere, strictly speaking, to the question of the weight of the evidence, yet the court below was in duty bound, from the evidence submitted, to decide whether the improvement, construction, or work had commenced before the filing and recording of the deed and mortgage as of date May 26, 1922, as above set forth. This was obligatory upon the part of the court below in order to determine, in contemplation of law, the priority

and validity of the mortgage, which would settle the question whether the better lien was with the bank trustee or the lienholders.

Evidence was submitted of a conflicting nature to the effect that the lienholders had priority over the mortgage, because, under the statute, the work, construction, and improvements were begun prior to the recording of the mortgage. Of course, this question involved the legal proposition whether such work was commenced in contemplation of law; in other words, was the work, improvement, or construction of such a nature that apparently, obviously, and visibly it formed in and of itself a component part of the structure, so that when the structure arose from the ground the work, improvement, or construction commenced prior to the mortgage would appear as part of the structure itself, as a physical identity, which, speaking in its own behalf, would indicate the situation prior to the recording of the mortgage? The holding of the common pleas court, that the mortgage was a valid and prior lien, signified that upon the question of fact the construction and improvement were not commenced prior to the recording of the mortgage, as claimed by the lienholder.

These questions of fact so found, deduced from conflicting evidence, relate to the presence on the property of steam shovels, the location of test holes, the driving of stakes, and other work of a similar nature. The court found, as a matter of fact, that these matters and things, under all the evidence in the case, did not constitute a beginning of the construction or a commencement of the work and

494    OHIO APPELLATE REPORTS.

N. S. Boulevard Co. *v.* Natl. Bank.    [22 Ohio

improvement, even if the lienholders' claims were true.

Upon such a state of the record, the reviewing court is enjoined, by an avalanche of Ohio authorities, from disturbing the judgment of the court below as to the facts, unless it is apparent from the record that a grievous error, misapprehension, or mistake occurs, the tendencies of which are to misguide and mislead the court in its judgment. In the absence of such a condition in the record, even though the opinion of the reviewing court might differ from that of the court below, it becomes the duty of the reviewing court to refuse to disturb the judgment, for the reason that such a status in a record of facts creates a legal situation to which the reviewing court must render obedience. We quote authorities upon this proposition as follows:

"Certain of the facts as above stated are controverted by the pleadings and in the evidence, and counsel for plaintiff in error strenuously contend for a construction of the evidence that would warrant a finding of facts more favorable to the plaintiff in error; but it should be borne in mind that while this case is here for review on error, and the evidence submitted to the court below is brought into the record, and the facts of the case that are controverted by the pleadings are to be ascertained from the evidence, yet in this proceeding we have not the same liberty of action in the consideration of the evidence as was possessed by the judge of the court of common pleas, who, upon a jury being waived, sat in its stead as the trier of the facts; our authority is limited by certain well-established rules as well applicable to findings made by a judge

OHIO APPELLATE REPORTS. 495

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

under such circumstances as those made by a jury, among which is the rule that it must be presumed that the existence of any fact necessary to sustain the judgment was found by the court, if the question of the existence of such fact was involved in the issues, and the evidence (where, as in this case, it is brought into the record) may be found by fair construction to sustain such finding; and the further rule that, to justify a reviewing court in the conclusion that such finding is against the weight of the evidence, it must appear to be so clearly opposed thereto as to indicate distinctly prejudice, blundering, perversity, or improper influences operating upon the mind of the trier of the fact to produce a wrong conclusion." *Gibsonburg Banking Co.* v. *Wakeman Banking Co.,* 20 C. C., 591, 10 C. D., 754.

"A judgment by the court without the intervention of a jury is to be treated, on review as to weight of evidence, according to the same rules that apply to a verdict by a jury; that is, the judgment cannot be reversed unless manifestly against the weight of the evidence." *Gebaur* v. *Vesper,* 20 C. C., 711, 10 C. D., 820 (Hale, Marvin and Caldwell, JJ.).

When the evidence is conflicting a verdict will not be reversed, because the evidence against the verdict is strong. *Higgins* v. *Drucker,* 22 C. C., 112, 12 C. D., 220 (Caldwell, Hale and Marvin, JJ.).

Therefore we come to the question of law and its application to the facts—whether the court below committed prejudicial error in determining in favor of the priority and validity of the mortgage. In the consideration of this question, we

496 OHIO APPELLATE REPORTS.

N. S. Boulevard Co. *v*. Natl. Bank.     [22 Ohio

cannot eliminate the force of the photographs which appear as exhibits, and which were taken the day after the recording of the mortgage, to-wit, on May 27, 1922. These photographs furnish unmistakable proof that the site of the improvement was clean, and clear of any evidence of an obvious, apparent, and physical nature warranting the conclusion that the work, improvement, or construction had been commenced prior to May 26, 1922. If the matters and things claimed to have been done by the lienholders prior to the mortgage, at the instance of the owners of the property and with the knowledge of the bank trustee, were done, then it is apparent from the greater weight of the testimony that by the lienholders' own act there was removed, prior to the recording of the mortgage, all evidence relating to the commencement of the improvement. In the most favorable light that these circumstances can be viewed, the lienholders, accountable for the situation as observed from the photographs, are estopped from claiming priority of liens over the mortgage by reason of what they claim was done before the mortgage was recorded.

Again, there is credible evidence in the record to warrant the presumption and conclusion that if said work was done, as is contended for by the lienholders, it was not done for any other purpose except to create a countenance that would foster the promotion of the enterprise, which was to be effaced either in whole or in part by their own connivance, for the purpose of creating a situation by the removal of all evidence from the premises that would warrant the loan on the mortgage and the issuing of the bonds, the very basic resources

OHIO APPELLATE REPORTS.            497

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

for the security of all creditors connected with the promotion of the improvement and the enterprise.

Does it not appear plainly from the record that self-interest alone would prevent the lienholders from destroying themselves by creating in good faith a situation which would paralyze the confidence of financiers in the investment? Reasoning thus, there is only one conclusion, and that is that what was done prior to the recording of the mortgage was done without authority and in express violation of orders. This conclusion is irresistible, because any act that would destroy the loan would be destructive of the enterprise and every one connected therewith. Thus reasoning on the principle of self-preservation, we feel satisfied that the conclusion of the court below was correct as to the facts, and that it properly applied the law to the situation.

Construction cannot start with a deception, and it must be founded upon a contractual relation in good faith, and cannot depend in law upon a mere caprice, a whim, or a face made false for financial purposes, either intentionally or otherwise. From a reading of the record one is justified in concluding that under Section 8321-1, General Code, the mortgage was a construction mortgage within the contemplation of that statute.

There are many authorities which support the view that under the record in this case there is no priority of liens, and it is not necessary to cite them all, but we take occasion to say that nowhere have we found the essence of the law as it is derived from general judicial authority so well laid down as in an address before the Cleveland Bar

498 OHIO APPELLATE REPORTS.

N. S. Boulevard Co. *v.* Natl. Bank. [22 Ohio

Association by eminent counsel in the case at bar appearing in behalf of the lienholders, and inasmuch as it is quoted in the brief of counsel for the bank trustee we copy it. It is as follows:

"It therefore becomes very important to know just what constitutes the commencement of the construction. The question has been raised as to whether or not a job is commenced when the architect has surveyed the lot and started the preparation of plans in his office, or when some subcontractor has started to manufacture doors or windows specially for the building, which work is done in his own factory. While these questions have not been clearly settled, there is considerable dicta on this subject which would indicate that the court would hold that there must be some physical act done on the premises which is visible and which would be sufficient to indicate to a person examining the premises that the construction is actually and properly commenced. *Rider* v. *Crobaugh,* 100 Ohio St., 88, at page 95, 125 N. E., 130; *Geer* v. *Tuggle,* 22 N. P. (N. S.), 129. In the latter case it was held that the house is begun when digging for the foundation is started."

We also cite the following authorities:

Drawing plans and specifications not a commencement. *Stevens* v. *Garland,* 198 Mich., 24, 164 N. W., 516.

Staking out the plan of the building or the line of foundation is not commencement of construction. 27 Cyc., 217; *Pusey & Jones* v. *Penn. Paper Mills,* 173 F., 634; *Kelly & Martin* v. *Rosenstock,* 45 Md., 389; *Brooks* v. *Lester,* 36 Md., 65; *Conrad & Ewin-*

OHIO APPELLATE REPORTS.                499

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

*ger* v. *Starr*, 50 Iowa, 470, 472; *Hagenman* v. *Fink*, 19 Pa. Co. Ct. R., 660.

Placing of lumber or other materials on the premises not commencement of work. 27 Cyc., 217; *Pusey & Jones* v. *Penn. Paper Mills* (C. C.), 173 F., 634; *Kansas Mortgage Co.* v. *Weyerhaeuser*, 48 Kan., 335, 29 P., 153.

The doing of certain grading that was done to get the depth and in order to prepare the plans was held not to be the commencement of work. *Kelly & Martin* v. *Rosenstock*, 45 Md., 389, 392.

Authorities in support of those above cited could be multiplied, but it is an essential and striking fact in every cause that the record of the case under discussion is not in all material respects like any other case that appears in the books, and this fact forces the inevitable conclusion that after all what governs is the record of the case pending for decision, and applying that test to this case the testimony, conflicting though it is, is invincible as against the contention of the lienholders that the work, construction, excavation, or improvement had been commenced, or that the materials were begun to be furnished, keeping in mind Sections 8310 and 8321, General Code.

We now approach the question of the validity of the mortgage, keeping in mind, as we consider the proposition, the fact that the Harriman National Bank of the city of New York was not acting as a bank, but as a trustee, and keeping thoroughly before us the acts heretofore set forth performed by the defendant in error prior to June, 1923, when the foreclosure action was started by the trustee because of defaults of the conditions in the mort-

500    Ohio Appellate Reports.

N. S. Boulevard Co. *v.* Natl. Bank.    [22 Ohio

gage. What is the necessity of discussing the authority of the bank trustee to do business in Ohio without complying with all the statutes relative to foreign trust companies or foreign banking corporations doing business in Ohio, if from the record in the case and under the authorities laid down by our courts in similar cases the bank trustee transacted no business in Ohio in contemplation of law. The only act performed in Ohio by the bank trustee of any substantial nature whatsoever was filing in the court of common pleas of Cuyahoga county the action to foreclose the mortgage in the instant case. Certainly it cannot be said that such single act constituted in law, and in contemplation of the Ohio statutes, transacting or doing business in the state of Ohio, for if it did then no New York banking institution or banking institution of any other state outside of Ohio could conduct business with any Ohio banks relating to loans, discounts, deposits, drafts, daily balances, foreign exchanges, the honoring of checks, mutual accounts, or any other matter or thing, without complying with the provisions of Section 178 and other sections of the General Code. In the doing of any of the things above enumerated by a bank outside of Ohio and a bank in Ohio, the foreign bank would be transacting business in Ohio; but is it such business as was contemplated by the statutes? It cannot be. In a sense all national banks derive their authority from federal law, and no state law is valid which is in contravention therewith, and the state law must be complied with only when the provisions of the federal banking act so declare. Under the record in the case at bar every substantial thing in relation

OHIO APPELLATE REPORTS.            501

App.]      N. S. Boulevard Co. v. Natl. Bank.

to the mortgage and the bonds was to be done in New York and not in Ohio, by the mutual agreement incorporated in the instruments of writing between the parties. It is not a question of a foreign corporation or a foreign trust company doing business in Ohio. It is plainly obvious from the record that it is a question of business in Ohio going to the state of New York to be transacted with the bank trustee there, and not here. Even the matter of the recording of the mortgage in Ohio was eliminated as an obligation of the bank trustee. So, therefore, it appears to this court, in the absence of any evidence in the record, that it was unnecessary to comply with the statutes of Ohio, because the bank trustee was not, in the sense of the law, as contemplated by the Legislature and the authorities, doing or transacting business in Ohio. It had no office, no agency, no headquarters, no officers, no establishment, no address, no branch, no domicile in Ohio, so that, in the final analysis, the real question is, Can the filing of the foreclosure suit bring the bank trustee into Ohio as an entity doing and transacting business in this state? The authorities are against such a presumption and against such a conclusion.

No single act is interpreted in law as the transaction of business, in the sense contemplated by our statute, no more so than a single sale of intoxicating liquor is a traffic in the same. The authorities supporting this presumption are numerous. We quote *Martin* v. *Bankers' Trust Co.*, 18 Ariz., 55, 156 P., 87, Ann. Cas., 1918E, 1240, which was a case in foreclosure on property in Arizona mortgaged to the Bankers' Trust Company of New

502          OHIO APPELLATE REPORTS.

N. S. Boulevard Co. v. Natl. Bank.          [22 Ohio

York, which had been qualified to do business in Arizona. The same defense made in that case is made in the case at bar, and went so far as to say that "all acts done shall be utterly void." The court in that case held that simply acting as trustee of the mortgaged property in Arizona was not carrying on business in the state of Arizona, and below is an excerpt from the language of the court:

"In order to invoke the provisions of said paragraph 911 [Civ. Code 1901], it is clear that it must first be shown that the corporation sought to be disqualified is one carrying on a business, enterprise, or occupation in this state. In the face of the finding by the court that the appellee has never done any act whatever in this state or had any agent whatsoever at any time here, except the bringing of this suit and the employment of attorneys to conduct the same, it is difficult to understand how the appellee comes within the class of corporations restricted. The prosecution of a suit in the courts of this state is not carrying on a business, enterprise, or occupation in this state within the plain meaning of the statutory provision. 19 Cyc., 1279 and 1280, where numerous authorities in support of the text are cited.

"In accepting the trust and executing the trust deed and receiving the stock certificates in New York it was not violating any law of Arizona. *Allgeyer* v. *Louisiana,* 165 U. S., 578, 17 S. Ct., 427, 41 L. Ed., 832; *Toledo Traction, Light & Power Co.* v. *Smith* (D. C.), 205 F., 643; *Mannington* v. *Hocking Valley Ry. Co.* (C. C.), 183 F., 133."

In *George* v. *Oscar Smith & Sons Co.,* 250 F., 41, 162 C. C. A., 213, syllabus 4 holds: "Where a Penn-

OHIO APPELLATE REPORTS. 503

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

sylvania corporation in that state made a loan secured by a deed of trust on Mississippi land, the deed of trust, though executed in Mississippi, being delivered in Pennsylvania on the corporation's payment of a draft attached thereto, such corporation was not doing business in Mississippi, so its failure to comply with the Mississippi statutes prescribing conditions upon which foreign corporations might do business in the state would not preclude enforcement of the deed of trust.''

To support our view above stated that a single act does not constitute doing business within the state of Ohio, we think the reasoning in the following authorities supports our view: *Babbitt* v. *Field,* 6 Ariz., 6, 52 P., 775; *Farrior* v. *New England Mortgage Security Co.,* 88 Ala., 275, 7 So., 200, 12 L. R. A., 856; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S., 727, 5 S. Ct., 739, 28 L. Ed., 1137.

As bearing upon the power of national banks, we quote the following authority, which is in line with many others of a similar nature: ''National banks are instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt, by a state, to define their duties or control the conduct of their affairs, is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties, for the performance of which they were created.'' *Davis* v. *Elmira Savings Bank,* 161 U. S., 275, 283, 16 S. Ct., 503, 40 L. Ed., 700.

504    OHIO APPELLATE REPORTS.

N. S. Boulevard Co. *v.* Natl. Bank.    [22 Ohio

Again, upon the question of the significance of a single act constituting doing business within a state, we quote from Judge Killits in *Toledo Traction, Light & Power Co.* v. *Smith* (C. C.), 205 F., 643, at page 654:

"It is not every act done by a corporation and an exercise of its corporate powers that amounts to 'transacting business' or 'doing business' within the terms of these statutes. For instance, the change of a form of certificate of stock held in this state and issued by the plaintiff, a foreign building and loan company, and pledged to it as collateral for a loan upon which it sues in this state, is not. *Demland* v. *Loan Co.,* 11 C. D., 249. Nor the bringing of an action in this state by a foreign corporation to recover compensation for land unlawfully taken by a railroad company. *Trust Co.* v. *Railway Co.,* 7 N. P. (N. S.), 497. These are all the Ohio decisions which have much point. They are consistent with the interpretation of similar language in statutes of other states, as to which operates the rule stated by Thompson (Section 6671) as follows:

" 'The transaction of occasional or incidental corporate business does not necessarily bring a corporation within the provisions of such a statute, though it may be more than a single transaction. If the matters performed are merely incidental to the carrying on of the general corporate business in its own domicile, it may not be doing business within the meaning of such a statute.' "

Notwithstanding the facts expressed as to the lack of necessity to comply with Ohio laws applying to the bank trustee, it is significant that the

OHIO APPELLATE REPORTS.  505

App.]        N. S. Boulevard Co. *v.* Natl. Bank.

bank trustee, before the filing of the mortgage suit, made the deposit in the state of Ohio as aforesaid, and received the certificate from the state authorities as set forth herein, and out of an abundance of caution in every substantial way attempted to comply with Section 178 of the General Code and the other sections of Ohio laws relating to foreign trust companies and foreign banking corporations doing business in Ohio. We have come to the conclusion from the record in the case, that, even if the Ohio statutes enforced compliance and obedience on the part of the bank trustee, the provisions of the Ohio statutes were substantially complied with, and it is our judgment that if the bank trustee ought to have complied with the Ohio laws and had failed therein, the mortgage would not thereby be rendered null and void, for a court of equity, with the authority from Eaton on Equity, *supra,* above quoted, could take care of the situation without disturbing the trust itself, and thus fulfill the purpose of a court of equity in a case like the one at bar, to protect the public which had in good faith purchased bonds on the strength of a mortgage security that was prior to all other liens of whatsoever nature. Any other conclusion would be violent, especially where such a decision would render the mortgage nugatory and destroy the bonds that were purchased in good faith. Under this record, to hold views contrary to those herein expressed would undermine that faith and security which is vital to the body politic itself, especially where the entire transaction is untainted with deception, dishonesty, or fraud.

As bearing upon this last proposition, we cite

506    Ohio Appellate Reports.

N. S. Boulevard Co. *v.* Natl. Bank.    [22 Ohio

the rule laid down by Judge Sanborn in the decision of the Circuit Court of Appeals of the Eighth Circuit in *Blodgett* v. *Lanyon Zinc Co.,* 120 F., 893, 58 C. C. A., 79, as follows:

"In the absence of an express provision of statute to the contrary, the innocent acts and contracts of a foreign corporation, which has failed to comply with the statutes permitting it to do business in the state where the contracts are made and the acts done, are valid and enforceable, because it is not the intent of the authors of such laws to strike down contracts or acts in performance of them that are not evil in themselves."

*Air-Way Electric Appliance Corporation* v. *Day, Treas.,* 266 U. S., 71, 45 S. Ct., 12, 69 L. Ed., 169, decided by the Supreme Court of the United States October 20, 1924, substantiates the views herein expressed.

Holding these views, the judgment of the lower court is affirmed, but with respect to the personal property as to which no mechanic's lien was filed the judgment of the lower court is reversed.

*Judgment accordingly.*

Vickery, P. J., and Levine, J., concur.