IN RE ESTATE OF A. R. ANDERSON.

AUDUBON COUNTY, appellee, v. NONA GROHE et al., appellants.

No. 48205.

(Reported in 56 N.W.2d 913)

FEBRUARY 10, 1953.

326

Hobart E. Newton, of Stuart, and Harris & Harris, of Jefferson, for appellants.

Dale D. Levis and H. Wayne Black, both of Audubon, for appellee.

L. L. Ryan, of Audubon, for executors and trustees.

OLIVER, J.—Item G of Paragraph 3 of the will of A. R. Anderson provides:

"Seventeen and one-half percent (17½) of my estate I hereby give to my executors to hold in trust for the following purpose, towit: In the event that the County of Audubon, Iowa, shall raise by the levy of taxes, issuance of bonds, or thru other donations, a fund equal in amount to that herein disposed, for the purpose of building and equipping a county hospital at Audubon, Iowa, then in that event my executors shall pay over to the proper officers and funds of said county the said seventeen and one-half percent of my estate to aid in the construction and equipment of a county hospital, provided, however, that unless said fund shall be raised and construction of such a hospital be commenced within ten years after my death, then this gift and bequest shall lapse and become void and of no effect."

The will contains various other provisions, among which is a clause giving the residue of the estate to certain collateral heirs. This will was before this court in Jensen v. Nelson, 236 Iowa 569, 19 N.W.2d 596. Although Item G may have been considered in the district court trial of the former case, that appeal did not involve this item. The case at bar was based upon an application by the Board of Supervisors and Board of Hospital Trustees of Audubon County for an order directing the payment of the bequest in Item G, which the executors were holding in trust. The residuary legatees resisted, contending the county had failed to commence construction of a county hospital within ten years after decedent's death and hence had forfeited all rights to the legacy in Item G, which then fell into the residue of the estate. The district court adjudged the county had complied with the requirements of Item G and ordered payment to the county of

the trust fund of approximately $9100. The resisters have appealed. We agree with the conclusions of the trial court.

The trial was in equity upon agreed facts, subject to objections to the relevancy and materiality thereof. Testator died March 4, 1941. In 1944 the voters of the county authorized the issuance of $75,000 bonds to erect, equip and maintain a county public hospital. Thereafter the Board of Supervisors appointed a Board of Hospital Trustees as provided by statute. In December 1944 the hospital board visited various hospitals and in January 1945 selected a site in Audubon for Audubon County Memorial Hospital. In February the hospital board engaged an architect to draw plans, make specifications and do all architectural work on the hospital. Thereafter, the hospital board secured a deed to the hospital site from the Board of Supervisors. Later the hospital board removed the tenants occupying the buildings thereon and advertised and sold the buildings which were then removed from the site.

August 14, 1945, the hospital board certified to the Board of Supervisors a $22,000 budget for maintenance for 1946. Later the $75,000 bond issue was sold by the Board of Supervisors. Then the hospital board contacted the Public Works Administrator and learned federal funds might be obtained. The architect's plans were completed and the hospital board intended to construct the hospital building in the spring of 1946. However, the architect advised them the funds were insufficient to complete the project. Negotiations for funds with the United States Public Health Service and the State Department of Health were continued. In 1946 legislation to enable the county to vote an additional bond issue was sponsored. This legislation was enacted the next year and in 1948 an additional bond issue of $100,000 was voted.

In the summer of 1949 the hospital board fixed a maintenance budget for 1950. November 30, 1949, the engineer was directed to survey the site. In January 1950 the hospital board arranged with the State Highway Commission and the county to build a road to the hospital site, taking from the site, dirt required for that purpose. In the summer the hospital board contracted for the removal of certain trees, fences, concrete steps and dirt from the site, filling the basement of the house which

had been moved from the site and leveling the site. This work was shortly completed at a cost of $1320. The hospital board secured the approval of the hospital plans by the State Department of Health. Arrangements were made for adequate power and light for the hospital. November 29, 1950, the hospital board concurred with state and federal hospital officials in their approval of the architect's plans. January 9, 1951, the engineer reported he had made soundings for footings on the site to a depth of fifteen feet.

January 17, 1951, the hospital board adopted a motion to concur with state board of health in setting February 16, 1951, for opening and letting contracts. An earlier hour on the same day was set for hearing objections to the erection of the hospital. The final plans, as approved by state and federal officials, were accepted. February 6, 1951, the architect was paid $11,550 for services to date. February 16, 1951, the bids were opened but it was necessary to reject bids on the mechanical contract and the State Department of Health would not allow the acceptance of any bids until bids on all contracts could be accepted.

February 23, 1951, a resolution accepting the bequest in Item G, as provided by section 565.6, Code of Iowa, 1950, was adopted by the hospital board and the Board of Supervisors. This resolution recited the issuance of $75,000 bonds voted in 1944,* the issuance of $100,000 bonds voted in 1948, more than $40,000 collected by popular subscription in the county, a commitment from the Federal Government of more than $141,000, together with other funds which raised the total amount available for the completion of the hospital to more than $411,000 in addition to the $9100 bequest, and in addition the hospital board had already expended approximately $18,000 for architect's fees, clearing and grading and surveying the site, abstract of title and advertising for bids. It will be remembered testator died March 4, 1941. March 9, 1951, bids for the mechanical contract were opened. March 16, 1951, bids on all contracts were accepted. These totaled $395,798.65.

No footings for the building were laid within ten years after testator's death. Nor were excavations for footings or basement made within that time. Apparently this work was done some weeks later. The first bill of the general contractor was presented

and paid June 19, 1951. At the time of the trial in October 1951 the walls of the hospital building had been constructed and work upon it was proceeding.

Appellants treat the word "hospital", in the clause in question, as meaning the hospital building only. The opinion of the trial court points out that a hospital requires means of ingress and egress, lands, equipment, staff, management and many other things. It is a fair inference Item G contemplated the securing and preparation of a site in connection with the erection and equipping of the building. Hence, we conclude the word "hospital" as there used should not be considered in its limited meaning of a building only but should be interpreted more broadly as meaning an institution, with physical equipment consisting in part of land, a building or buildings and appurtenances.

When was the construction of the hospital commenced? Both sides refer to Goben v. Akin, 208 Iowa 1354, 1357, 227 N.W. 400, 401, which states: "The meaning of the word 'construction' is variable, depending on the subject matter and connection."

Appellants rely largely upon decisions under mechanics' lien statutes. They quote from Conrad & Ewinger v. Starr, 50 Iowa 470, and Kiene v. Hodge, 90 Iowa 212, 57 N.W. 717, and decisions of other courts referred to therein. Without detailed reference to these we will say the text in 57 C. J. S., Mechanics' Liens, section 179b, page 732, sets out, in substance, what appellants argue is the Iowa rule in mechanics' lien cases:

"The commencement of the building or improvement within the meaning of mechanics' liens statutes is the visible commencement of actual operations on the ground for the erection of the building, the doing of some work or labor on the ground, such as beginning to excavate for the foundation or the basement or cellar, walling the cellar, or work of a like description, which everyone can readily see and recognize as the commencement of a building, and which is done with the intention and purpose then formed to continue the work until the completion of the building."

Assuming, without deciding, this is correct, it does not follow it is the measure to be applied in determining whether a

charitable gift was forfeited. Mechanics' liens are based upon statutes limited to that subject. They involve the question of notice, in some states by express statutory language. It has been said the commencement of actual operations on the ground for the .erection of a building is constructive notice to all persons who propose to purchase or acquire liens upon the property, of claims for mechanics' liens for work or material contributed for the building. No such considerations are involved in the interpretation of the language of Item G providing for the commencement of construction of a hospital. There is no governing statute nor question of constructive notice. Hence, decisions in mechanics' lien cases are here of little assistance.

In Livingston v. Lenox College, 192 Iowa 579, 185 N.W. 122, a $25,000 bequest to a college for a certain purpose was upon condition the college raise $25,000 within one year. The college merely secured pledges payable in the future. The court construed the word "raise" to mean the obtaining of responsible pledges payable within a reasonable time and held the college had met the condition.

In City Missionary Soc. v. August Moeller Memorial Foundation, Inc., 101 Conn. 518, 126 A. 683, a bequest was made to a group of societies for a home for poor and elderly Germans, with a condition that if such a home was not acquired and established within five years from testator's death the provision would be void. Three days before the termination of the five-year period a house was purchased and dedicated as a home for the purposes mentioned in the will. Only a small portion of the purchase price was paid. The house required repairs which were promptly made but it was not ready to receive inmates for several months. The court held the home had been acquired and established within the five-year period.

In Wilcox v. West, 45 Cal. App.2d 267, 271, 114 P.2d 39, 42, 43, 45, the Reporter syllabus states in part:

"The location of wells, hauling lumber on leased premises, erection of derricks, providing water supply, moving machinery on the premises, and similar acts preliminary to beginning of actual work of drilling, when performed with bona fide intention to proceed thereafter with diligence toward completion of

well, constitutes 'commencement' or 'beginning' of well or drilling operations within mineral lease requiring lessee to begin or commence drilling within certain time on penalty of forfeiture or payment of delay rental.

" 'Commence' means to cause to begin to be; perform the first act of; enter upon; begin; to originate; to do the first act in anything; to take the first step; to start."

To the same effect is Robinson v. Gordon Oil Co., 258 Mich. 643, 646, 648, 242 N.W. 795, 796. We quote therefrom:

"In Terry v. Texas Co. (Tex. Civ. App.), 228 S.W. 1019, the lease required the lessee to 'commence to drill a test well for oil within eight months.' The court held, quoting from the syllabus: 'Lessee, by placing timbers for erection of derrick and machinery, including boiler, on the ground where oil well was to be drilled, complied with provision requiring him to "commence to drill" well within a certain period; the word "commence" being defined as "to perform the first act of." ' * * *

"So in the instant case, assuming but not holding that the lease required the plaintiff to begin drilling on or before December 1, 1930, he satisfied that requirement of the lease in the preparations he made for drilling. They were a necessary part of the drilling."

Some other similar decisions are: Durbin v. Osborne, 292 Ky. 464, 166 S.W.2d 841; Smith v. Gypsy Oil Co., 130 Okla. 135, 265 P. 647; Fleming Oil & Gas Co. v. South Penn Oil Co., 37 W. Va. 645, 17 S.E. 203; Fast v. Whitney, 26 Wyo. 433, 187 P. 192.

■ The ultimate question is whether the rights of the county to the legacy were forfeited for failure to comply with the requirements of Item G: "construction of such a hospital [to] be commenced within ten years after my death." Appellant contends the quoted language is plain and unambiguous and there is no room for its construction. With this we are unable to agree. Authorities hereinbefore cited show such language may have variable meanings, depending largely upon the context. Since this is a charitable trust its language will be given a broad and liberal construction, favorable to its purpose. Jensen v. Nelson, 236 Iowa 569, 19 N.W.2d 596, and citations; In re Will of Hagan,

234 Iowa 1001, 1007, 14 N.W.2d 638, 641, 642, 152 A. L. R. 1296. Nor will its forfeiture be declared in a doubtful case. 14 C. J. S., Charities, section 66, page 532.

The record shows continuous and extensive planning and preparations for the hospital from 1944 when the first bonds were voted. In 1950 and prior thereto considerable work was done on the site of the institution, which had been secured in 1945. By February 1951 approximately double the amount of the charitable bequest had been paid out for work on the site and for architect's and engineer's fees, etc. The money necessary to construct and equip the hospital had been raised, the plans had been settled and approved, bids for the work had been received and in part rejected and the hospital board had again called for bids.

We hold the work done on the site and the preparation for the building were a necessary part of the construction of the hospital within the meaning of the cited authorities. Hence, they were sufficient to prevent the forfeiture of the bequest.

In view of this conclusion other propositions relied upon to support the judgment need not be considered.—Affirmed.

All JUSTICES concur except LARSON, J., not sitting.