**DIVERSIFIED MORTGAGE INVESTORS, Plaintiff,**

v.

**GEPADA, INC., et al., Defendants.**

**Civ. No. 74–33–W.**

United States District Court,
S. D. Iowa, W. D.

Sept. 29, 1975.

Carl K. Hoffman, Miami, Fla., Clark R. Irey, II, Omaha, Neb., Donald T. Steege, David F. McCann, Council Bluffs, Iowa, for plaintiff.

Samuel G. O'Brien, Des Moines, Iowa, Emmet Tinley, Council Bluffs, Iowa, for defendant Gepada, Inc.

Philip Willson and Frank W. Pechacek, Council Bluffs, Iowa, for defendant First National Bank of Council Bluffs and Iowa Power & Light Co.

Peter J. Peters, Council Bluffs, Iowa, for defendant Andersen Construction Co.

C. Adam Schulte, Council Bluffs, Iowa, for defendant Spener Restaurant Design, Inc.

F. J. Kraschel, Council Bluffs, Iowa, for defendant Interstate Electric Supply Co.

Jack W. Peters, Council Bluffs, Iowa, for defendant Receiver (for operation of Ramada Inns).

Lyle A. Rodenburg, County Atty., Council Bluffs, Iowa, for defendant Pottawattamie County, Iowa.

## ORDER

HANSON, Chief Judge.

This action was commenced by plaintiff's filing of a "complaint for foreclosure of real estate mortgage" on August 21, 1974. The suit seeks foreclosure of a real estate mortgage given by defendant-mortgagor, Gepada, Inc., to the National Bank of Des Moines, which in turn assigned the mortgage to Diversified Mortgage Investors (DMI), the plaintiff herein. DMI is a Massachusetts business trust. Defendants are various entities from states other than Massachusetts. Since the amount in controversy exceeds $10,000, this Court has jurisdiction under 28 U.S.C. § 1332(a) (1970).

The instant controversy involves a matter of priorities between two parties: DMI, the mortgage holder, and the Andersen Construction Company, which claims rights under a mechanic's lien.

### FINDINGS OF FACT

1. On June 20, 1972, the Andersen Construction Company of Council Bluffs, Iowa (Andersen Construction) entered into a contract with Gepada, Inc., an Iowa corporation, for the construction of a Ramada Inn near the intersection of 27th Avenue and 24th Street in Council Bluffs. This contract was in the amount

of nine hundred sixty-eight thousand dollars ($968,000) and was subject to renegotiation after July 31, 1972, as notice to proceed had not been given by Gepada on or before that date.

2. Herbert Andersen is the president of the Andersen Construction Company. Mr. Andersen was the company's representative in the contract negotiations with Gepada.

3. The land on which the motel in question was to be built was undeveloped prior to the summer of 1972. As of August 7, 1972, no work had been done on the lot by Andersen. It was weed-covered, and contained a few trees. Surrounding lots were agricultural, with corn and other crops planted on them.

4. On August 7, 1972, Andersen visited the lot with one F. M. Warburton, president of Gepada, Inc. Mr. Andersen was told by Mr. Warburton that financing for the motel project was imminent. Their visual inspection of the lot revealed that fill would be needed to raise its elevation for proper drainage to the street. Andersen was directed to determine how much fill would be necessary, and to estimate its cost.

5. Approximately two weeks later, a farmer was engaged by Andersen to mow the weeds which were covering the lot. After removal of the weeds, Andersen visited the site and spent approximately four hours determining existing ground elevations. From these figures, a plat was prepared from which estimates of needed fill were made. These steps were completed by the first week of September, 1972.

6. Subsequent to Andersen's survey of the lot for purposes of the plat, he engaged Petry and Sons Contractors to strip six inches topsoil, weeds, and vegetation from the lot. This precaution was to prevent any settling of the filled land. The job took two days. Some dispute exists between the parties as to when this stripping took place. It is the testimony of Andersen that it was done in early September, and at the latest before September 21, 1972. The Court finds from a preponderance of the evidence that the soil was stripped sometime before September 25, 1972.

7. On September 21, 1972, Andersen Construction and Gepada signed a revised contract. This document was identical to the June 20th contract, with these exceptions: the contract price was increased to one million fifteen thousand seventeen dollars ($1,015,017.00); grade and fill requirements were increased; a standby propane fuel system was added; the thickness of some asphalt paving was increased; and roof specifications were changed.

8. The mortgage on the property involved herein was given by Gepada to the National Bank of Des Moines on September 22, 1972. The mortgage was recorded on Monday, September 25, 1972 in the Pottawattamie County Recorder's office, and was assigned to plaintiff DMI on December 7, 1973.

9. A formal groundbreaking for the motel was held on September 26, 1972. Andersen began actual work on the footings for the building on September 28, 1972.

10. On April 11, 1974, Andersen filed a mechanic's lien against the mortgaged premises with the Clerk of the Pottawattamie County District Court.

## CONCLUSIONS OF LAW

The legal question presented by this case is a narrow one. Section 572.18, Code of Iowa (1975), provides that:

Mechanics' liens shall be preferred to all other liens which may attach to or upon any building or improvement and to the land upon which it is situated, *except liens of record prior to the time of the original commencement of the work or improvements* . . . (emphasis added).

Plaintiff's mortgage was recorded on September 25, 1972; the issue is simply whether the Andersen Construction Company's "original commencement of the work" of building a motel occurred before September 25th. If it did, Ander-

sen's mechanic's lien takes priority over DMI's mortgage; if it did not, the mortgage is prior. Because of the alleged default of Gepada, Inc., DMI is seeking a sum in excess of $1,500,000 as the amount due under the mortgage. Andersen's mechanic's lien is in the amount of $67,-317.75.

■ The parties agree that the question of whether Andersen "commenced" work prior to September 25, 1972, is a matter of Iowa law. The Court has been unable to find any recent Iowa decisions which shed light on this matter of statutory interpretation. The Court's research does indicate, however, that two older Iowa rulings in this area are still viable. In *Conrad & Ewinger v. Starr*, 50 Iowa 470 (1879), the Iowa Supreme Court endorsed the view "that the commencement of a building under the mechanic's lien law is the first labor done on the ground, which is made the foundation of the building, and is to form part of the work suitable and necessary for its construction." *Id.* at 481. This statement was reaffirmed in *Kiene v. Hodge*, 90 Iowa 212, 215, 57 N.W. 717 (1894). *See also New Hampshire Savings Bank v. Varner*, 216 F. 721, 727 (8th Cir. 1914), *aff'd*, 240 U.S. 617, 36 S.Ct. 409, 60 L.Ed. 828 (1916).

■ The *Kiene* and *Conrad* cases place Iowa with those states that adhere to the following rule regarding the accrual of a mechanic's lien:

The commencement of the building or improvement within the meaning of mechanics' liens statutes is the visible commencement of actual operations on the ground for the erection of the building, the doing of some work or labor on the ground, such as beginning to excavate for the foundation or the basement or cellar, walling the cellar, or work of a like description, which everyone can readily see and recognize as the commencement of a building, and which is done with the intention and purpose then formed to continue the work until the completion of the building.

In re Anderson's Estate, 244 Iowa 325, 56 N.W.2d 913, 915 (1953), quoting 57 C.J.S. Mechanics' Liens § 179b.

■■ It is undisputed that no part of the actual motel building itself appeared on the Gepada lot at the time plaintiff's mortgage was filed. As the Iowa Supreme Court has noted, mechanic's lien statutes

. . . involve the question of notice . . . . It has been said that the commencement of actual operations on the ground for the erection of a building is constructive notice to all persons who propose to purchase or acquire liens upon the property, of claims for mechanics' liens for work or material contributed for the building.

In re Anderson's Estate, *supra*, at 916. So stated, "commencement" under § 572.18 is a term of art keyed to constructive notice. It is a different concept than commencement "in fact." *Id.* See also *M. E. Kraft Excavating & Grading Co. v. Barac Construction Co.*, 279 Minn. 278, 156 N.W.2d 748, 752–54 (1968).

The evidence in this case establishes that as of the date DMI's mortgage was filed, the land in question was a vacant lot which had recently been stripped of six inches of topsoil and vegetation. No structures had yet been erected. These facts are similar to those in *Clark v. General Electric Company*, 243 Ark. 399, 420 S.W.2d 839 (1967). In *Clark* a mechanic's lien claimant had spent some eight hours removing old foundations from the lot in question, and leveling the land with a bulldozer. After these steps were taken, but before footings for the concrete foundations were dug, a mortgage was filed. In holding that the leveling operations were insufficient to constitute a "commencement" for mechanic's lien purposes, the Arkansas Supreme Court made the following comments:

We had occasion to determine whether there was a "commencement" of a building sufficient to establish lien priority recently in *Mark's Sheet Metal, Inc. v. Republic Mortgage Co.*,

242 Ark. 475, 414 S.W.2d 106. There we held that the work done must be such as to make it obvious that improvements on the property were being commenced or were underway. We said that the clause in question means some visible or manifest action on the premises to be improved, making it apparent that the building is going up or other improvement is to be made. Reference was made in that opinion to *Rupp, Trustees v. Earl H. Cline & Sons,* 230 Md. 573, 188 A.2d 146, 1 A. L.R.3d 815. In that case, the Maryland Supreme Court held that neither the removal of soil from a part of a development site intended for the erection of an apartment building to another part of the site, intended for the construction of cottages, nor the grading and leveling of the apartment site constituted such "commencement" under a similar statute so as to give a mechanic's lien preference over a subsequently recorded mortgage. They relied on their previous decisions holding that commencement of the building is "the first work on the ground which is made the foundation of the building and forms a part of the work suitable and necessary for its construction" (*Brooks v. Lester,* 36 Md. 65) and that driving of stakes and digging away of soil to level the ground prior to beginning the construction were not sufficient (*Kelly v. Rosenstock,* 45 Md. 389). They had said in the earlier cases that the work must be such that everyone can readily see and recognize it as commencement of a building. This rule is followed by a great majority of the cases in which the question has arisen in states with statutes similar to ours. It is generally held that the mere preparation of the land for the construction is not sufficient. See Annot., 1 A.L.R.3d 822.

Even though not followed as an unqualified rule, actual and visible improvement to establish priority has been held in many of these cases not to begin until such work as excava-tion for a basement or foundation has begun. National Lumber Co. v. Farmer & Son, Inc., 251 Minn. 100, 87 N.W. 2d 32; North Shaker Boulevard Co. v. Harriman Nat'l Bank, 22 Ohio App. 487, 153 N.E. 909; Hagenman v. Fink, 19 Pa.Co.Ct.R. 660; Roy Bldg. & Loan Ass'n v. King, 17 Pa.Dist. & Co.R. 83, 22 Del.Co. 297; Davis-Wellcome Mtge. Co. v. Long-Bell Lbr. Co., 184 Kan. 202, 336 P.2d 463; George M. Newhall Engineering Co. v. Egolf, 185 F. 481 (3d Cir.). It has also been held that the labor or materials must be such as could afterward become, or be considered, a component part of the structure. Conn. General Life Ins. Co. v. Birzer Bldg. Co., Ohio Com.Pl., 101 N.E.2d 408, 61 Ohio Law Abst. 477; Sheridan, Inc. v. Palchanis, 172 So.2d 872 (Fla.App.1965). At any rate, the weight of authority seems to be that clearing, grading and filling of the land do not constitute the commencement of a building for the purpose of establishing priorities of mechanics' and materialmen's liens. See, Kiene v. Hodge, 90 Iowa 212, 57 N.W. 717; Central Trust Co. v. Cameron Iron & Coal Co., CC, 47 F. 136; New Hampshire Savings Bank v. Varner, 216 F. 721 (8th Cir.); aff'd 240 U.S. 617, 36 S.Ct. 409, 60 L.Ed. 828; Maule Industries, Inc. v. Gaines Const. Co., 157 So.2d 835 (Fla.App.1963). *Id.* at 833–34.

It is this Court's conclusion that the Iowa Supreme Court's decision in *Kiene v. Hodge* still states the law of Iowa. Under *Kiene,* as well as the related decisions cited in *Clark,* the Company's acts prior to September 25, 1972, were insufficient to institute "the original commencement of the work" for purposes of § 572.18 of the Iowa Code. At most, the Gepada lot was stripped of weeds, checked for elevations, and stripped of six inches of topsoil prior to September 25, 1972. Indeed, it was the testimony of Mr. Andersen that all of these acts had transpired by September 21, 1972, the date on which the

actual contract for construction of the motel was signed. A determination of how much fill would be needed for the lot went directly to determining the terms of the contract. The other acts, taken prior to the signing of a contract to construct the motel, were merely a preparatory operation; they did not constitute commencement of a building. *Cf.* Jim Walter Homes, Inc. v. Bowling, 521 S.W.2d 828, 829 (Ark.1975). Under the *Kiene* rule, the company's mechanic's lien would accrue from September 28, 1972—the date actual on-site work began on the motel footings. Plaintiff's mortgage, having been filed three days earlier, is prior.

It is therefore ordered that the mortgage of the plaintiff herein, Diversified Mortgage Investors, is hereby adjudged and decreed to be the prior lien on the property, and that in the event the mortgage premises shall be sold, the lien of the plaintiff shall first be paid from the proceeds thereof before the proceeds be applied to the Lien of the defendant Andersen Construction Company.