### CONNECTICUT GEN. LIFE INS. CO. v. BIRZER BLDG. CO. et al.

Common Pleas Court, Hamilton County.

Nos. A-113084, A-113085.  Decided April 27, 1950.

478

480

Burke & Cooney, Cincinnati, for plaintiff.

Conrad Magrish, James G. Headley, Robert F. Dreidame, William B. Davis, Sidney C. Brant, Charles M. Evans, Cincinnati, Hiram Bolsinger, Norwood, Alton E. Purcell, Cincinnati, for defendants.

## OPINION

By WEBER, J.

On April 7, 1950 the Court filed a partial opinion, 101 N. E. 2d 403, in which it was held, by reason of the doctrine of res

judicata, that the judgment in favor of Anthony Birzer was a valid judgment and also that the lien of Anthony Birzer recorded December 1, 1947 in Lien Book 61, page 467, was a valid lien. The opinion also rendered two judgments in favor of The Connecticut General Life Insurance Company for monies advanced on its two notes and held that a mortgage recorded May 19, 1948 in Mortgage Book 2210 page 462, securing the payment of one of said notes, and the mortgage recorded May 19, 1948 in Mortgage Book 2210, page 457, securing the payment of the other note, were valid encumbrances and ordered foreclosure of said mortgages and the sale of the properties therein described.

The opinion also held valid the chattel mortgages set forth in the petitions.

The purpose of this opinion is to render judgments on the cross-petitions of the other defendants and to determine the priority of the various liens and order of distribution of the proceeds of the sale of the real estate described and the distribution of the proceeds of the sale of the materials covered by said chattel mortgages, decision of which questions were deferred in the previous opinion.

The court finds that there is due to The McGibney and Baker Excavating Company from the Birzer Building Company the sum of $2478.93 with interest at six per cent per annum from the 8th day of September 1948, as claimed in its cross-petition, and judgment is rendered for said amount. No lien was filed covering this claim.

The court finds that there is due to the J. & V. Rack and Company from the Birzer Building Company the sum of $3306.75 with interest at the rate of six per cent per annum from the 1st day of July 1948, as claimed in its cross-petition and that its liens securing said amount, recorded August 3, 1948 in Lien Book 62 page 124, and recorded August 3, 1948 in Lien Book 62 page 127, and recorded August 26, 1948 in Lien Book 62 page 152, are valid and subsisting liens on the property therein described, and also the sum $681.60 with interest at the rate of six per cent per annum from the 30th day of June 1948, as claimed in its cross-petition and that the lien securing said amount recorded August 3, 1948 in Lien Book 62 page 125 is a valid and subsisting lien on the property therein described and judgment is rendered accordingly.

The court finds that there is due to the Harry Riemeier Lumber Company from the Birzer Building Company the sum of $1512.88 with interest at the rate of six per cent per annum from the 9th day of July 1948, as claimed in its

cross-petition, and that its lien recorded August 23, 1948 in Lien Book 62 page 156, securing this amount, is a valid and subsisting lien on the property therein described and judgment is rendered accordingly.

The court finds that there is due to Frank Adams and Company from the Birzer Building Company the sum of $1031.07 with interest at the rate of six per cent per annum from the 16th day of July 1948, as claimed in its cross-petition and that its lien securing said amount recorded September 8, 1948 in Lien Book 62 page 162 is a valid and subsisting lien on the property therein described and judgment is rendered accordingly.

The court finds that there is due to Neal Kersey from the Birzer Building Company the sum of $706.95 with interest at the rate of six per cent per annum from the 15th day of July 1948, as claimed in his cross-petition and that his lien recorded September 2, 1948 in Lien Book 62 page 163 is a valid and subsisting lien on the property therein described and judgment is rendered accordingly.

The court finds that there is due to the Hilltop Building Materials, Inc. the sum of $3,428.71 with interest at the rate of six per cent per annum from the 15th day of August 1948, as claimed in its cross-petition and that its liens securing said amount recorded September 1, 1948 in Lien Book 62 page 158, Lien Book 62 page 159 and Lien Book 62 page 160 are valid and subsisting liens on the property therein described and judgment is rendered accordingly.

There is no evidence of this defendant's claim to a judgment for this amount against the General Insurance Company of America.

The court further finds that said defendant has no claim against the General Casualty Company of America, as surety upon the bond (Exhibit 42).

The court finds that there is due to The Norwood Sash and Door Manufacturing Company from the Birzer Building Company the sum of $210.12 with interest at the rate of six per cent per annum from the first day of June 1948, as claimed in its cross-petition and that its lien securing said amount recorded July 22, 1948 in Lien Book 62 page 114 is a valid and subsisting lien on the property therein described and judgment is rendered accordingly.

The court finds that the lien of Anthony Birzer recorded on December 1, 1947 in Lien Book 61 page 467 is prior to the two mortgages of The Connecticut General Life Insurance Company recorded on May 19, 1948 in Mortgage Book 2210 page 457 and Mortgage Book 2210 page 462 and also prior to all the mechanics' liens herein listed.

It is claimed that although said Anthony Birzer lien may be prior to said mortgages and said mortgages prior to the mechanics' liens, the Anthony Birzer lien has no priority over the mechanics' liens herein listed. This claim is based on two grounds:

1. That the Anthony Birzer lien is for work which was the "commencement of said construction, excavation or improvement," and makes the effective date of the mechanics' liens the same as the date of the performance of said work. As hereinafter pointed out such claim is untenable.

2. That since the Anthony Birzer lien was filed under §8339 GC, it is denied priority over the mechanics' liens by reason of the provisions of §8341 GC which reads in part as follows: "But if several persons have or obtain liens under the provisions of the next two preceding sections, against the property of the same employer; they shall have no priority among themselves, but all must be paid pro rata. Nor shall they have priority over those obtaining liens under other sections of this chapter, providing therefor, but the persons obtaining liens thereunder shall have priority as provided therein."

The prorating prescribed is among those who have filed liens under §8339 GC and not among holders of liens under said section and holders of liens under §8310 GC. The provision that such liens shall have no priority over liens obtained under other sections was necessary as a saving clause in view of the fact that priority is given under §8339 GC over certain specific liens and for labor performed within a certain period. The meaning of this provision is that no priority shall be gained for liens obtained under §8339 GC because of the peculiar nature of the lien, that is for manual labor performed for an employer, regardless of the date of the recording. That such liens shall have no priority merely because of their nature is manifested by the further provision "but the persons obtaining liens thereunder (that is under other sections, such as §8310 GC) shall have priority as provided therein." Priority to liens acquired under §8339 GC is not denied under all circumstances and such is not the purpose of the provision. Rather the purpose of the provision is to preserve the priority to liens acquired under other sections, including §8310 GC, according to the provisions of such other sections. Referring to §8321 GC we find that the mechanics' liens recorded under §8310 GC: "have no priority among themselves" but they have priority to all other liens "which may attach to or upon such construction, excavation, machinery, or improvement, or to, or upon the land upon which they are

situated, which shall either be given * * * the commencement of said construction, excavation, or improvement."

As hereinafter pointed out, the Anthony Birzer lien was not for work constituting the commencement of construction, etc., and was recorded December 1, 1947, which was long prior to the commencement of said construction or improvement and is therefore prior to the mechanics' liens recorded under §8310 GC.

Anthony Birzer, in addition to claiming the priority of his lien, also contends that the mortgagee, The Connecticut General Life Insurance Company, under the provisions of §8321-1 GC is obligated to pay off said lien without reference to the proceeds of the sale. This contention cannot be sustained for the reason that the mortgagee has the option of discharging prior liens or taking its mortgage subject thereto. **Paragraph 1** of §8321-1 GC provides: "Said mortgagee may at any time pay off said prior encumbrance or encumbrances, or withhold the amount thereof for that purpose."

It will be noted that the word **may** is used in the above provision, but that the word **shall** is used in other provisions of the same section. This court agrees with the conclusion of the court in Ulmer v. Portage Construction & Finance Co., 26 Ohio N. P., N. S., 257, 283: "that when the Legislature used the words **may** and **shall** it did so designedly."

Priority Between Mortgage and Mechanics' Liens

To determine the priority between the mechanics' liens herein listed and the two mortgages, the mortgages must be treated as having two possible characteristics, namely construction mortgages and mortgages recorded prior to the "commencement of the construction, etc."

1. The parties intended to and expressly made the mortgages construction mortgages. Paragraph 18 of the mortgages provides in part: "And the mortgagor and mortgagee hereby covenant and agree that this mortgage is made in pursuance of, and subject to, the provisions of §§8321 and 8321-1 GC and that the mortgagee is hereby authorized and empowered to do all things in said sections provided by the mortgagee to be done and that the proceeds of said mortgage will be disbursed by the mortgagee in accordance with the provisions of said sections."

**Sec. 8321-1 GC** provides in part as follows: "the lien of [said] mortgage * * *shall be prior to all mechanic's, material men's and similar liens and all liens provided for in this chapter that are filed for record after said * * * mortgage is filed for record, to the extent that the proceeds thereof are used and applied for the purposes aforesaid and pursuant

to the provisions of this section, * * * regardless of the time when the money secured thereby is advanced."

It is admitted that of the amount of $10,914, advanced under the mortgage referred to in case No. A-113084, the sum of $2573 was advanced contrary to the provisions of §8321-1 GC, and that of the amount of $2,749.80, advanced under the mortgage referred to in case No. A-113085, the sum of $1372 was advanced contrary to the provisions of §8321-1 GC. Therefore said mortgages, considered as construction mortgages, are liens prior to the mechanics' liens only to the extent of $8341 in case No. A-113084, with interest at four per cent per annum from September 1, 1948, and only to the extent of $1377.80 in case No. A-113085, with interest at the rate of four per cent per annum from October 1, 1948.

Whether the holders of any of the mechanics' liens have released or waived any of their rights with reference to the amounts advanced contrary to the statute will be determined hereinafter.

2. The purpose of §8321-1 GC is to give to a construction mortgage priority over mechanics' liens although the mortgage was recorded subsequent to the effective date of the mechanics' liens. However, it has been held that the provisions of this section of the Code were not intended to and do not, of their own force, prevent priority to a mortgage recorded prior to the commencement of the work. **Rider v. Crobaugh, 100 Oh St 88,** 125 N. E. 130. The two mortgages were recorded May 19, 1948. The mechanics' liens were all recorded thereafter. It therefore becomes necessary to determine on what day the first work was done or the first materials were furnished. The test to be applied is well stated in the case of the **North Shaker Boulevard Company v. Harriman National Bank, 22 Oh Ap 487,** 493, 153 N. E. 909, 910: "was the work, improvement, or construction of such a nature that apparently, obviously, and visibly it formed in and of itself a component part of the structure, so that when the structure arose from the ground the work, improvement, or construction commenced prior to the mortgage would appear as part of the structure itself as a physical identity which, speaking in its own behalf, would indicate the situation prior to the recording of the mortgage?" See also DeWitt Ohio Mechanics' Liens, Section 202.

The work of Anthony Birzer for which he filed a lien on December 1, 1947 under §8339 GC and for which he could not have filed a lien under §8310 GC, see **Robert V. Clapp Co. v. Fox, 124 Oh St 331,** 178 N. E. 586, was performed prior to December 1, 1947. The nature of that work, as described

by Anthony Birzer in his lien, was such that it cannot qualify under the above test as the "commencement of the work."

The statute provides that "The several liens herein provided for shall be liens from the date the first labor * * * was furnished by the [original] contractor." **Sec. 8321 GC.** The original contract for construction was entered into on May 10, 1948 (Exhibits 6 and 7). The various mechanics' liens were acquired by reason of labor done and materials furnished under the original contract but the work of Anthony Birzer was performed prior to the execution of said contracts. Furthermore, the photographs taken on May 19th or May 20, 1948 (Exhibits 40 and 41) by Louis Graf, a Registered Engineer, who surveyed the property, and his testimony in reference to the conditions then existing on the land, show that on May 10, 1948, the day on which the mortgages were recorded, there was no work done or materials supplied which would meet the above test. According to the evidence the first materials were furnished by the Norwood Sash and Door Manufacturing Company on May 27, 1948 and the first definite grading and excavation was done by J. & V. Rack & Company on May 28, 1948; until that time nothing was done which could afterwards be considered a component part of the structure. That the parties intended the mortgages should be recorded before the commencement of the work is indicated by that part of paragraph 18 of the mortgages, which reads as follows: "The mortgagor hereby represents that no work has been commenced or materials furnished to or in connection with any improvements on the mortgaged premises before the date hereof and will not be commenced or furnished until after the date of the recording of this mortgage," and the evidence above referred to shows that in fact no such work had been commenced or materials furnished on the day the mortgages were recorded. The mortgages were therefore recorded prior to the effective date of the several mechanics' liens. However, the proceeds of the loan secured by said mortgages were to be advanced in future installments and the extent of the priority of the advances is covered by the rules laid down in the case of **Kuhn v. Southern Ohio Loan and Trust Company, 101 Oh St 34, 126 N. E. 820:** "Syllabus 1. A mortgage, duly recorded, given for definite future advances, which the mortgagee is obligated to make, is entitled to priority for the full amount of such advances over a subsequent mortgage, recorded after the former one, though prior to the making of such future advances."

The mortgagee herein was obligated to make definite future advances in a certain manner, according to paragraph 17 of

the mortgages, which reads in part as follows: "That the funds to be advanced herein are to be used in the construction of certain improvements on the lands herein described, in accordance with a building loan agreement between the mortgagor and mortgagee dated May 10, 1948 which building loan agreement is hereinafter mentioned."

The said agreement, as set forth in paragraph 18 of the mortgages, is that they "are made in pursuance of and subject to the provisions of §8321-1 GC."

Whether such a situation destroys the priority gained by the fact that the mortgages were recorded before the effective date of the mechanics' liens has not been decided although it was referred to in the case of In re Taylor, 6 Cir., 20 F. 2d 8, 10: "There is no language in the * * * mortgages stipulating that they shall be considered as mortgages within the meaning of §8321-1 GC, or that the rights and obligations of the parties should be governed by such section; and we need not consider the case as if such language were present."

The mortgages under consideration did stipulate that the terms of said section of the General Code were the terms of the contract and fixed the obligations of the mortgagee as to future advances. The mortgagee therefore acquired no priority as to the advances that were made on June 11, 1948, (Exhibits 10 and 15) that is, after the effective date of the mechanics' liens, and in a manner different than that imposed by the contractual obligation.

Whether treated as construction mortgages or mortgages recorded prior to the effective date of the liens, the mortgage set forth in case No. A-113084 is prior to the mechanics' liens to the extent of $8,341 and the mortgage set forth in case No. A-113085 is prior to the mechanics' liens to the extent of $1,377.80, unless the said amounts of the priorities of the mortgage liens are increased by reason of waivers executed by some of the mechanics' lien holders.

Waivers

The plaintiff claims that some of the defendants released their rights to mechanics' liens to whatever extent that said liens would prevent the mortgages from being prior liens to the full extent of all payments made by the mortgagee. This claim is based upon the following language in the receipts for monies advanced, Exhibits 14 and 18: "In consideration of the payments made as hereunder provided under the heading 'Amount Received,' before the completion of his, its or their respective part of said improvements, the undersigned covenant that his, its or their respective lien rights against said premises for the amounts that will be due upon the

completion of his, its or their respective part of said improvements shall be subject and inferior to your mortgage thereon."

The case of Whitmer v. Arthur, 23 Ohio N. P., N. S., 481, holds: "The waiver of all right of lien by one who has furnished labor or materials is not open to attack for want of consideration."

Neither the facts nor the reasoning in said case supports such a conclusion. The better rule is that stated in 57 C. J. S., Mechanics' Liens, §223, page 795: "waiver of a mechanics' lien must be supported by a consideration in order to be effective."

The right to a mechanics' lien is a valuable legal right, the surrender of which by release, or otherwise, except estoppel, must be supported by a valuable consideration in order to be effective.

Doing what one is legally bound to do is not a valuable consideration. The mortgagee under the statute and its contracts was bound to make the payments for which said receipts were given.

**Paragraph 4** of §8321-1 GC provides: "Such mortgagee shall pay on the order of the owner, the accounts of such material men * * *, the amounts due for material then furnished and labor then performed on said improvement."

It will be noted that the language in the above provision is **shall pay** amounts due for material **then furnished,** etc. As heretofore pointed out, §8321-1 GC in some of its provisions uses the word **may** and in other provisions the word shall and such distinctions were intentionally made by the legislature. The direction to make said payments (Exhibits 12 and 17) was that the owner "authorizes and orders you to pay * * * amounts under the heading **Now Due."** The mortgagee was bound to pay and there is no acceleration of the time that the payment was required to be made or any other alteration in the legal position of the mortgagee. Furthermore, these payments were the first payments made and at that time there were sufficient funds on hand to make the payments and no reasonable anticipation that there would be insufficient funds to complete the work.

The court holds that the releases or waivers were not binding for want of a valuable consideration.

It is the judgment of the court that the priorities of liens are as above set forth and in accordance therewith the proceeds of the sale of the real estate described in the petitions should be distributed in the following order:

1. To Anthony Birzer the sum of $2,935.50 with interest at the rate of six per cent per annum from January 3, 1949:

2. To The Connecticut General Life Insurance Company

the sum of $8,341 with interest at the rate of four per cent per annum from September 1, 1948 and the sum of $1,377.80 with interest at the rate of four per cent per annum from October 1, 1948;

3. The full amounts of the respective judgments on the mechanics' liens listed herein or if the balance of the fund is insufficient to pay all in full it should be prorated among the holders of the mechanics' liens;

4. If the mechanics' lien holders are paid in full the judgment of The McGibney and Baker Excavating Company should be next paid in full;

5. Any remaining funds should be distributed as provided by law.

### Chattel Mortgages

Certain lumber has been delivered by the Harry Riemeier Lumber Company and is now on the properties but has not yet been incorporated into the buildings. Against said lumber the plaintiff has two chattel mortgages, which the court has held to be valid and subsisting liens and the said Harry Riemeier Lumber Company has a mechanics' lien which the court has held to be a valid and subsisting lien. It has been stipulated by said parties that the lien of the Harry Riemeier Lumber Company is superior to the plaintiff's chattel mortgages as to such of said lumber as is now on the property and has not been paid for and that the quantity and type of said lumber is now unknown but will be determined by counsel of said parties, and when so determined will be sold separate and apart from the sale of other chattels covered by the plaintiff's chattel mortgages.

Please draw entry accordingly.

### Supplementary Opinion
### Decided May 31, 1950.

In the opinion filed on April 27, 1950 it was pointed out that the Harry Riemeier Lumber Company had filed a mechanics' lien for $1,512.88; also that at least part of the lumber furnished by said company was on the real estate described but unincorporated into the structure. Further reference was made to the stipulation between the Harry Riemeier Lumber Company and The Connecticut General Life Insurance Company that the lien of said lumber company was superior to the chattel mortgages of The Connecticut General Life Insurance Company as to said unincorporated materials and that said chattels would be sold separate from the other chattels on the premises covered by the chattel mortgages. Thereafter a rehearing was requested by other parties to the suit on the question as to the priority of the chattel mortgages.

The mechanics' lien recorded by the Harry Riemeier Lumber Company lists the material furnished by it and also describes the real estate and claims a lien "on said contiguous and adjacent lots of which the Birzer Building Company is the owner and described as follows: * * * also a lien on all constructions, excavations and improvements now or hereafter erected on said lots and all fixtures and articles of personal property of said Birzer Building Company now on said premises and to be attached to or used in and about the building now or hereafter erected thereon."

It will be noted that the lien is not claimed exclusively on the particular lumber furnished by the claimant, but upon all articles of personal property, etc. The respective mechanics' liens of each of the other parties merely describe the real estate. The two chattel mortgages were executed by the Birzer Building Company to The Connecticut General Life Insurance Company and secured the same indebtedness as the two real estate mortgages. One of the chattel mortgages lists the material located on the site but unincorporated into the structure as of June 22, 1948 to the amount of $1,200 and was recorded July 23, 1948 in Chattel Mortgage Book Z-27979. The other chattel mortgage lists materials located on the site but not incorporated into the structure on June 22, 1948 in the amount of $6,100.88 and was recorded July 23, 1948 in Chattel Mortgage Book Z-27980. Said materials consisted of lumber, steel, etc.

The first question is—Who owns said unincorporated chattels? There is no evidence that the suppliers retained title by a conditional sale or otherwise. Immediately upon delivery title passed to the Birzer Building Company. The fact that the Birzer Building Company executed the chattel mortgages to The Connecticut General Life Insurance Company is necessarily based upon the assumption by both the mortgagor and mortgagee that the title to the chattels was in the Birzer Building Company. If so, the chattel mortgages were valid and subsisting liens, subject, however, to any superior lien thereon which may have attached by reason of the mechanics' liens or the real estate mortgages. Since all the parties who supplied any of said unincorporated materials have recorded mechanics' liens covering the entire unpaid amounts due them respectively, they necessarily have waived any common law possessory lien which they may have had.

The next question is whether a mechanics' lien can be asserted against such unincorporated material and if so by whom and by what manner of description. No specific au-

thorities have been cited by counsel. The authorities in the various states are in conflict, the interpretation depending, to a large extent, upon the wording of the particular state's statute under consideration. See 33 A. L. R. 320, Annotated. But it seems to be fairly well settled in Ohio by the following authorities that such unincorporated materials may be embraced within the mechanics' lien although only the real estate for which they were furnished is described, providing such failure to incorporate was no fault of the suppliers:

**Beckel v. Petticrew, 6 Oh St 247.** A mechanics' lien was taken on the real estate for which the material was furnished and it was held in Syllabus 2: "The lien authorized by the act * * * will extend to all the materials in good faith furnished for the purpose of erecting or repairing a house in pursuance of an agreement with the owner, notwithstanding a portion of such materials may subsequently be otherwise appropriated without the consent of the party furnishing them."

The **Robert V. Clapp Company v. Fox, 124 Oh St 331,** on **page 337,** 178 N. E. 586, on page 588. After pointing out that the word **upon** is used in connection with **work** and the word **for** is used in connection with **materials** and defining and distinguishing these terms, the Court stated: "If these definitions are adopted and applied, work and labor must be rendered upon the premises, while material need only be suitable to the purpose, requirement, and character of the building and necessary to it. Ordinarily, the materials must enter into the structure to permit a lien, but it may well happen that expensive fabrication of materials may be made without the materials being called for * * * or the **failure to complete a building,** and the lien would attach though [the materials] never entering into the structure. This will serve to illustrate the evident purpose of the Legislature in employing the word 'for' concerning materials, and the word 'upon' as applying to work and labor."

Harriman Nat. Bank v. North Shaker Boulevard Company, 25 Ohio N. P., N. S., 263. The motion to certify overruled, **23 Ohio Law Rep. 213.** There was a large amount of stone cut and a large amount of stone uncut which had been supplied for the building.

"The theory of the mechanics' lien law is that those who do labor and furnish material going into the erection of a building, thereby enhance the value of the land on which it is erected, and are entitled to a lien on the completed structure. Under strict interpretation, if the material was not used in the building there would be no added value to the land.

"This rule, of course, is relaxed if the material was furnished to go into the building, but was prevented by some act of the owner. It is apparent that a mechanics' lien rests solely on the proposition of ownership and the right of possession having passed from the lien claimant to the owner. To claim a mechanics' lien and a possessory lien, or common law lien, are fundamentally contradictory."

The theory of the conclusions reached in the above quotations seems to be that materials adapted to and supplied for the purposes of the structure are constructively incorporated into the structure as soon as they are delivered upon the premises and title thereto has passed, although actual incorporation has been prevented by some fault of the owner and without fault on the part of the supplier. Such a conclusion is necessary in order to afford the supplier of materials the full protection intended by the mechanics' lien law. The court finds nothing in the express provisions or the purpose of said law which inhibits such a conclusion. On the contrary it seems to be warranted by the language of §8310 GC, which reads in part as follows: "Every person who * * * furnishes * * * material * * * for erecting, * * * a house * * * by virtue of a contract * * * with the owner, * * * of any interest in real estate, or the authorized agent of the owner, * * * of any interest in real estate, * * * shall have a lien to secure the payment thereof upon such * * * house * * * and upon the * * * material so furnished, and upon the interest * * * of the owner * * * in the lot or land upon which they may stand, or to which they may be removed * * *."

It will be noted that a single lien may secure the entire amount due and may comprehend three things, enumerated conjunctively, namely, the building, the materials so furnished and the land upon which they may stand or to which they may be removed. If it had been intended that the lien should embrace only materials which were incorporated into the building, the words "material so furnished" are superfluous since the word "building" necessarily includes all the materials which have been integrated into the building. To exclude from the coverage of the lien materials unless and until they were incorporated into the building would require the supplier of the materials to retain constant supervision over their disposition until such incorporation or run the risk of losing the benefit of the law.

But it is contended that if the lien covers unincorporated materials, it covers only the particular materials furnished by the particular lien-holder and only to the extent that such materials have been specifically described in the affi-

davit. The fallacy of this contention is illustrated by the situation in this case. The Harry Riemeier Lumber Company described the land and the chattels; the others described only the land. If the argument were sound the Harry Riemeier Lumber Company would have the exclusive right to the proceeds of the sale of the unincorporated chattels furnished and described by it and yet would share pro rata with the others, whether they furnished labor or materials, in the proceeds of the building and land which said company also described in its affidavit. But §8321 GC emphatically provides: "If several liens be obtained by several persons upon the **same job**, * * * they shall have no priority among themselves, * * *." **Sec. 8314 GC** provides: "an affidavit showing the amount due * * * a description of the property to be charged with the lien." Ordinarily a description of the real estate includes all structures which are considered in law fixtures or a part of the real estate and under the mechanics' lien law, according to the cases hereinbefore cited, all the material adapted to and furnished for the building, whether integrated therein or not, would be a part of the building.

The court holds that the mechanics' liens have priority over the chattel mortgages and attach to the land described in the various affidavits and all structures thereon and all materials located on the land and furnished for said structures, whether incorporated therein or not.

Counsel have raised no question as to whether the liens of the real estate mortgages attach to the materials furnished for the job but not integrated into the building. But since the evidence produced in the case indicates that the title to all such material passed to the owner of the land when delivered on the premises, a complete determination of the rights of the parties in the proceeds of the sale of the land and materials requires that such question be answered. It must be admitted that an ordinary real estate mortgage would not cover such materials. But the court in its opinion of April 27th decided that the two real estate mortgages were construction mortgages under §8321-1 GC and therefore were liens prior to the mechanics' liens to the extent that payments had been made in compliance with the provisions of said section. No Ohio case has been found which furnishes the answer to this question. The question being novel, the conclusion reached must be based upon a careful consideration of the peculiar nature and purpose of a construction mortgage and its relation to the mechanics' liens. The theory of the mechanics' lien law is that all who furnish materials for and perform work upon the job which enhances the value

of the real estate are engaged in a common enterprise and may acquire a property interest, superior to that of the owner, in the common fund in proportion to their unpaid contribution. To the extent that the construction mortgagee makes payments in the manner prescribed by the statute he preserves the value of the common fund and the statute gives the real estate mortgage priority over the mechanics' liens. If said mechanics' liens comprehend the unincorporated materials the construction real estate mortgages should also comprehend the unincorporated materials, otherwise said real estate mortgages will not have full priority. For the reasons heretofore stated, under the mechanics' lien law all the materials adapted to and furnished for the job are constructively a part of the building and therefore a part of the real estate for all purposes of the law, including the construction mortgage which is peculiar to the mechanics' lien law and by it designed for certain purposes and endowed with certain characteristics which differentiate it from the ordinary real estate mortgage.

The court is of the opinion that the construction real estate mortgages also comprehend the unincorporated materials adapted to and furnished for the job.

This supplementary opinion confirms the priorities and order of distribution outlined in the opinion of April 27th. The only modification of that opinion in the holding of the court herein that the chattels adapted to and furnished and delivered on the land for the purpose of the job contracted for are constructively a part of the building, although not acutally integrated therein, and are embraced in the mechanics' liens describing only the real estate and also in the liens of the two construction mortgages and that the proceeds of the sale of said materials and the proceeds of the sale of the real estate and structures thereon should be treated as a common fund to be distributed as outlined in the opinion of April 27th.